SANKEY & SHORTER, plaintiffs in error, *vs.* THE COLUMBUS IRON WORKS, defendant in error.

SANKEY & SHORTER, plaintiff in error, *vs.* HALL, MOSES & COMPANY, defendant in error.

1. Where, on the trial of an issue of partnership or no partnership, one witness swore that the capital stock, to-wit: a steam saw mill, was furnished by one, and the hands to run it by another, who was also to superintend the work, and that the profits were to be divided equally

Sankey & Shorter *vs.* The Columbus Iron Works.

between the two ; and another witness swore that the mill, fixtures and hands were furnished by one, and that the other was employed by the first as superintendent only, that he had no interest jointly with the first in the profits and losses, but was to receive one-half the net profits for his services, and had only a common interest in the profits :

*He'd,* That under section 1880 of the Revised Code, by the testimony of the first witness there was as to third persons, a partnership, since the hands furnished a part of the capital stock, and the partners had a part interest in the result; but that by the testimony of the second witness, no copartnership, even as to third persons, arises from the simple fact that one is to receive half the profits for his-services ; such an one has no joint interest in the profits and losses, but only a common interest in the profits, and it is error in the Court to charge this as the law to the jury, if they should believe the second witness.

2. Whatever may be the interest of the parties, and whether they be, in fact, partners under the bargain or not, they will be liable, as such, if they so act as to hold themselves out to the world as such.

3. Partnership or no partnership is a fact, and a witness may so state, but the fact so stated may be qualified and explained by other facts in evidence, either from the witness or from other testimony.

4. Objections to interrogatories on the ground that they are leading must be made when they are presented to the objector, to be crossed, and before they are executed.

5. The sayings of one of the partners, not expressly or by implication brought to the knowledge of the other, are no evidence against that other, in an issue of partnership or no partnership.

6. In a doubtful case, where the law was not presented fairly, in view of the evidence, a new trial may be granted. (R.)

Partnership. Evidence. Interrogatories. Before Judge JOHNSON. Muscogee Superior Court. November Term, 1870.

The Columbus Iron Works sued Sankey & Shorter as partners, for goods sold and delivered. Sankey was not served. Shorter pleaded that he was never Sankey's partner, etc. The account began in January, 1867, and ended on the 7th of March, following. Plaintiff proved the account by its books only. The contest was as to the fact of partnership. Plaintiff offered as evidence interrogatories answered by Sankey. The first question was, " do you know who composed the firm of Sankey & Shorter, who had a. saw mill in 1866 and 1867 in Russell county, Alabama. If

you were one of said firm state what connection James H. Shorter had with the firm." The answer was, "I know who composed the said firm, James H. Shorter and myself. Mr. Shorter furnished the mill, and I furnished the hands and run the mill." The second question was of like character. On these interrogatories was written, before they were crossed, an objection because they were leading and asked legal conclusions. These objections were insisted upon at the trial and overruled. But it was said in argument that they were not made till the trial. Besides the foregoing answer, Sankey therein testified that the partnership between him and Shorter lasted till the 1st of March, 1867; that he invested no money in the mill, it belonged to Shorter, but he, Sankey, bought stock to run the mill. "The contract was that I should superintend the mill, and have one-half interest in the mill and all appurtenances, for which I was to pay Mr. Shorter." He further swore that during Shorter's absence, in Cuba, he, Sankey, moved the mill to another place and arranged for another to furnish lumber and take an interest in the mill. Here plaintiff closed.

Defendant's counsel then asked to continue, that he might get a witness from Alabama to impeach Sankey, saying his answers had been in but a few days, he did not know what he would swear, and had not had time to get the testimony of the absent witness. The Court refused the continuance. Shorter then testified that in the fall of 1865 he owned said mill and appurtenances, and engaged Sankey to supervise it and gave him half of the net profits for his services; that Sankey never had any authority to use such firm name, that there was no partnership, nor did he know Sankey had used it till 1867, and immediately took steps to stop it. "Sankey had no joint interest in the property, nor joint interest in the profits and losses of the business; he had a common interest in the net profits alone; he was to share none of the losses if any were sustained in the business." And he denied knowing anything of the purchase of said goods, and said it was

after the removal of the mill, in his absence and without his knowledge. He was asked " the usage of the mill as to purchasing while he was with it," but the Court sustained an objection to this question. Defendant sought also to prove the arrangement which Sankey made with said third person when he moved the mill, but the Court would not allow him to do so.

As to the question of partnership the Court charged the jury, " if Shorter was to furnish the mill, and Sankey was to furnish the hands and supervise the running of the mill, and the net profits were to be divided between them, then Shorter was a copartner with Sankey, and as such is responsible to plaintiff. If Sankey, without the knowledge or consent of Shorter, formed a copartnership or made an arrangement with Wilkinson, such as was testified to, this would dissolve the partnership of Sankey & Shorter, and Shorter would not be liable as a partner for articles purchased by Sankey after such agreement with Wilkinson."

Defendant's counsel requested him to charge the jury: 1. " Where a party takes a common interest in profits alone for his services, he is not bound in law for any losses of the business; and if there are no profits and some debts, and the party gets no profits and is liable for no losses, there is no partnership." 2. " If Sankey and Shorter run a saw mill, and Shorter was to pay one-half the net profits to Sankey for his services alone, this does not make them partners." 3. " Participation in profits will not necessarily create a partnership in all cases as to third persons. Thus if a party has no interest whatsoever in the capital stock, and as between himself and the other parties he has also no rights as a partner, but is simply employed as an agent, and is to receive a given sum out of the profits as a compensation for his services, he will not be deemed a partner in the concern from that fact alone; nor as to third persons, because the transaction may justly be deemed a mere mode of ascertaining and paying the compensation of an agent as in a naked case of agency."

4. "The sayings of Sankey that Shorter was a partner, in his testimony, should not be considered."

The Court refused to charge the first request. He refused the second, and charged in lieu thereof that "if Shorter furnished the mill and Sankey furnished the hands and run the mill, and the net profits were divided between them, then Shorter was a partner with Sankey, and is responsible as such to plaintiffs. He refused to charge the third request. He also refused to charge the fourth, and in lieu of it charged "that partnership or no partnership is a fact which witnesses may swear to." The jury found for plaintiff for the amount sued for.

Shorter says the Court erred in overruling said objections to Sankey's interrogatories and answers; in refusing a continuance; in not allowing Shorter to testify as to the usage of the mill; in charging as he did, and in refusing to charge as requested. So much for the first of said cases.

The second is so very similar to it that a report of it is unnecessary. They were treated as one case here.

JAMES M. RUSSELL, for plaintiff in error. As to the interrogatories: R. Code, secs. 3809, 3811, 3812. Usage competent: R. Code, secs. 3752–1. Evidence of arrangement with Wilkinson competent: R. Code, secs. 1886, 1907, 1895; Story on P., sec. 5; 15 Miss. R., 370. The verdict was contrary to law: 18 Ga. R., 703; R. Code, sec. 1880; Hansard's P. Debate, volume 178, page 1274; 180, page 121; 10 Met. R., 303; 34 Howard's R., 536; Story on P., secs. 32, 36, 38, 49, 43; 12 Conn. R., 69; 14 Pick. R., 192; 14 Louis (Mo.) R., 52; 5 Gray's R., 588; 6 Met. R., 82; Smith on M. L., 40; 6 Halstead, 181; 1 Denio, 337; 2d, 279; 3 Conn. R., 132; 5 Iowa, 721; 25 Barb. 13.

PEABODY & BRANNON, for defendants in error. The questions are not leading: 1 Gr. on Ev., sec. 434. If they were Court may allow them: *Ibid.*, sec. 435. The exceptions

should have been filed with interrogatories: 37th Rule of Court. Verdict was according to law: 8 Ga. R., 285 ; 14th, 705; 33d, 243 ; 36th, 344.

McCay, Judge.

1. The important question in this case, the construction we are to put upon section 1880 of our Revised Code. That section is as follows: "A joint interest in the partnership property or a joint interest in the *profits and losses* of the business constitutes a partnership as to third persons. A *common* interest in profits alone does not."

Under the testimony of Sankey in these cases, he and Shorter were clearly partners, since, according to his statements, he was to furnish the hands and Shorter the mill, and the profits to be divided equally. According to this there was a joint interest in the stock, since that was made up of the mill and the hands to work it; and the case falls within the terms of the first line of the section.

But Mr. Shorter's testimony states directly the contrary of this. He furnished, as he says, the mill and the hands; Sankey was a mere superintendent, and had no interest at all in the stock. He says further, that Sankey did not have "a joint interest in the profits and losses, but only a common interest in the profits."

The language of this witness is in the express words of the statute, and, if it is to be taken literally, it comes exactly within the last sentence, which declares in terms that a common "interest in profits alone," does not make a partnership as to third persons.

It is contended, however, and, we think, rightly, that it is not for the witness to settle the rights of these parties by the particular *language* he uses. His whole testimony must be taken together, and the Court is to judge what he means, when he says that Sankey had not "a joint interest in the profits and losses, but only a common interest in the profits."

It is clear that he means that Sankey was to have an interest in the *net profits*. Now it is contended, that as the "net profits" are only what is left after paying expenses and losses, an interest in the net profits necessarily involves an in the losses.

The real question, therefore, is, what is meant by the words "a common interest in profits alone," in this section of the statute? Does it mean "gross profits," or may it also include the case of "net profits?" And if so, under what circumstances? There is some confusion in the authorities on this subject, and it is hard to reconcile them. In a very fair sense, it may be said that one whose interest is in the "net profits," is also interested in the losses, since the net profits can only be what is left after paying the losses, and there are many cases to the effect that one who is thus interested is a partner. On the other hand, it is true that the words "net profits" do not necessarily cover all losses, since it may be that there are no profits, and that the concern is in debt; and it is very reasonable that one should contract that he is not to be liable for losses, meaning that if the losses exceed the profits he shall not be liable for any part of the excess, and there are cases which clearly make this distinction. There are many cases, also, to the effect that one who is employed as an agent or clerk, and to be paid for his services in a share of the profits, is not a partner, even if the profits meant be the "net profits." The ground of the decisions is that he has no interest in the profits *as a partner*, but that the profits are merely the measure of his losses. We think the Code, section 1880, uses language evidently intended to convey this idea. The language is, that a *joint* interest in the profits and losses makes a partnership, but a *common* interest in the profits does not. If the interest is the interest of an owner, if there be a joint seizure, if the person whose interest is in question, has a right, as such *owner*, to dispose of the profits, then there is a partnership, if the parties be seized *per mi et per tout*. If one may dis-

approve of or control the profits as much as the other, then there is a joint interest. But if the party whose interest is in question have only a "common interest" in the profits with the other; that is, if he have no title jointly with the other; if his position be that of a mere employee, with no right of control as owner over the profits, but with only a common interest in them, that is, interested in common with the other, in their increase or decrease, because they measure the *amount* of his *wages,* then he is not a partner. Story on Partnership; Lee *vs.* Buckner, 285; *Dalton City Council vs. Dalton Manufacturing Company,* 33 Georgia, 243. *Same case affirmed,* 37 Georgia, 115.

We take it for granted that it was not intended by the Code to change the well settled rule upon this subject, to-wit: that if parties go into an adventure, one furnishing money or stock and the other skill or labor, and to share the net *profits,* they are partners, since it follows that in such a case they have a *joint interest* in the profits. It is significant that the language used is "*a joint interest* in the losses and profits constitutes a partnership as to third persons. A *common interest* in profits alone does not." The change of the word "joint," in the first sentence, into "common," in the last, indicates, as we think, the meaning to be as we have said. Now, in this case, Mr. Shorter swore that Sankey was only *an employee,* that he "engaged" him to superintend, that his interest was not that of a partner, but that he had a common interest in the profits. Now we think the Court ought to have charged the jury, pointing out this distinction, to-wit: that if Sankey's interest was only in the net profits as a measure of what Shorter was to pay him, if he had no *joint* interest with Shorter in them as their mutual *property,* then there was no partnership. Shorter's evidence would justify and require such a charge. The charge, as given, assumed that Sankey was to furnish the hands and Shorter the mill. If what Shorter says be true this was not fair to him. As he tells it, there was no furnishing in the matter. He en-

gaged or employed Sankey. Sankey *was not* to furnish the hands. We think Shorter had a right to have the law of the case put to the jury in the light of the evidence which he presented.

2. As a matter of course, whatever be the agreement, whether there be in truth a copartnership or only a hiring with the employee, interested in the profits so far only as that their net amount is to determine what his employer shall pay him for his labor, whatever be the truth, if the owner of the property permit his employee, with his knowledge, to hold himself out to the world as a partner, he is such as to third persons. This is nothing but plain common sense and honesty. To allow the contrary doctrine would be to countenance fraud.

3. It is sometimes difficult to say what is a fact and what is a conclusion. Half of what every man tells as facts is nothing but very certain conclusions. We think partnership or no partnership, ordinarily, may be stated as a fact. Son or no son, father or no father, stand on pretty much the same footing. Ordinarily, such things are stated as facts. A witness who states them is open to cross-examination, in which the ground of the statement can be inquired into. We think it would be restricting the range of statement too much to say that a witness cannot be permitted to state, as a fact, that one man was a partner in a firm.

4. The 37th Rule of Court positively *requires* that objections to interrogatories, on the ground that they are leading, must be filed before issuing the commission: New Rules, page 16.

5. After a partnership is established, the sayings of one in reference to the business binds the others; but on the question of partnership or no partnership, to make the sayings of one bind the others they must be made under such circumstances as would charge other persons on matters in dispute. They must, by implication, at least, be *quasi* admissions of the party to be charged.

James *vs.* Elliot.

Until the partnership is established, there is no relation between the parties that should make the sayings of one bind the other, more than there is to make any other sayings of one man to bind another. As the issue was here partnership or no partnership, the sayings of one, to bind the other, ought only to be such as would amount to *quasi* admissions of the party to be charged: that is, said under circumstances where the failure to deny them amounts to an admission.

1. We have some doubt as to our duty in this case, but upon the whole, we reverse the judgment, on the ground that the charge does not fairly present the law, in view of the evidence of Mr. Shorter.

Judgment reversed in both cases.