## CAMP *vs.* MONTGOMERY.

[Jackson, C. J., not presiding, on account of indisposition.]

Where three parties owned and ran a saw-mill jointly, on the agreement that one of them was to conduct the operations of the mill, pay all its expenses from the proceeds, and divide the net profits equally between himself and the other two, the three jointly owning the property from which the income was derived, this constituted a partnership between them.

(*a.*) A charge to the effect that if, under the contract for running the saw-mill, one of the parties was to be responsible for no part of the expenses or losses, but was to have a share of the profits only, such a contract would not make them partners, and the person conducting the mill could sue in his own name for lumber sold, was error, because it ignored all other facts in the case tending to

show that a partnership existed, and it did not fairly submit the issue. If there were two views of the case, under one of which a partnership would have existed and under the other not, the question should have been fully and fairly submitted to the jury.
December 15, 1885.

Partnership.   Charge of Court.   Before Judge BRAN-HAM.   Floyd Superior Court.   March Adjourned Term, 1885.

Reported in the decision.

C. N. FEATHERSTON, for plaintiff in error.

C. A. THORNWELL, for defendant.

HALL, Justice.

Montgomery brought suit against Camp for a bill of lumber, which he alleged by his declaration he furnished the defendant.   Upon the trial, it was shown that the lumber was furnished from a mill, owned and run jointly by the plaintiff and defendant, together with J. L. Camp, who owned one-half of defendant's interest therein.   Montgomery owned one-half and the two Camps the other half. Montgomery was to conduct the operations of the mill, to pay all its expenses from the proceeds, and to divide the net profits equally between himself and the Camps.   The defendant insisted, and it so appeared from the evidence and from the entries on the books kept by plaintiff, that the lumber was furnished for the joint use of himself and brother, J. L. Camp.

The controlling question in the case was this, whether there was a partnership existing in the milling business between the plaintiff and defendant; and it was insisted by the plaintiff that no such partnership existed between him and the defendant, however it might be as to third parties, because a participation in the net profits alone would not constitute a partnership between him and the defendant

If this were all that appeared, there might be less doubt as to the correctness of the position; but it is not all; the defendant and his brother owned, jointly with him, the property from which the income was derived;—it is distinctly admitted that he owned the property jointly with the defendant. "A joint interest in the partnership property, or a joint interest in the profits and losses of the business, constitutes a partnership as to third persons. A common interest in the profits alone does not." Code, §1890. A partnership may arise from a joint ownership, use and enjoyment of the profits of undivided property, real or personal. *Id.*, §1887. And again, "as among part-ners, the extent of the partnership is determined by the contract and their several interests." *Id.*, §1888. In *Martin et al. vs. Tidwell et al.*, 36 *Ga.*, 344, the court below charged the jury "that a partnership might exist where there was a joint interest in property and a joint interest in profits and losses in any adventure or enterprise," and this court, in commenting thereon, said: "The rule laid down by the court required more proof to constitute a partnership than the statute does; he required both a joint interest in the property and in the profits and losses." Parsons, in his excellent work on Partnership, p. 40, also 71 n. 1, states this to be the result of the authorities, as to what constitutes a partnership as between the parties, viz., that community of interest is the basis of the rela-tion. "But," he continues, "the question has often arisen and been much discussed, how far this community must extend; whether, for example, it must cover all losses as well as all profits; and although it is undoubt-edly true, that in much the greater number of partnerships there is a community of loss as well as of profit, the weight of authority, as well as of reason, seems to be decidedly in favor of the rule that there may be a legal and valid partnership, although one or more of the parties are guar-anteed by the others against loss;" and notwithstanding the last clause of section 1890 of our Code, that "a com-

mon interest in profits alone does not constitute a partnership, the rule seems the same in this state."

In *Sankey & Shorter vs. The Columbus Iron Works*, 44 *Ga.*, 228, this section of the Code (1890) was critically examined and thoroughly discussed, and the court reached the conclusion that a joint interest in the partnership property was another and a very distinct thing from a common interest in the profits alone; the former interest is that of an owner, who has a right to dispose of the profits, and that makes him a partner; but a common interest in the profits confers no title jointly with the other, and gives no power to control and dispose of the profits as the owner. To adopt the language of the court in that case, "We take it for granted that it was not intended by the Code to change the well-settled rule upon this subject, to-wit, that if parties go into an adventure, one furnishing money or stock and the other skill or labor, and to share the net profits, they are partners, since it follows that in such a case they have a joint interest in the profits," as contra-distinguished from a common interest, which would not constitute such a relation. *Id.*, 334, 336. In that case, the character of the interest in profits necessary to create a partnership was the only question involved. But ours is a much clearer case, since it was admitted that the parties were the joint owners of the property—were seized thereof *per my* and *per tout* from the use of which the profits were derived, and it falls directly within the terms employed in defining a partnership by section 1887 of the Code.

Instead of these principles, the judge of the city court of Rome charged the jury, "that if, by the contract between the plaintiff, Montgomery, and the defendant, Camp, in regard to the running of the saw-mill, Camp was to be responsible for no part of the expenses or losses, but was to have a share of the profits only, such a contract would not make them partners in running the mill, and Montgomery was entitled to sue in his own name for the lumber

sold.'' This charge entirely ignored all other facts in the case, going to show that a partnership existed between the parties, and the jury, under the instructions, had no alternative left them, but were compelled to find a verdict in favor of the plaintiff. Admitting that there was evidence in the case of a conflicting character, that in one view of it a partnership might be established, and under another it had no existence in fact, and that it made a doubtful case upon this question, then it should have been submitted to the jury under a correct charge; and failing thus to submit it, there was error. The defendant moved for a new trial upon the general grounds, and likewise alleged error in the charge above set forth. The motion was refused, and upon the case being carried to the superior court, the judgment of the city court was affirmed. We think there was error in this judgment of the superior court, and that the defendant was entitled to a new trial upon all the grounds taken in his motion.

Judgment reversed.