SOUTH CAROLINA AND GEORGIA RAILROAD CO. *v.* AUGUSTA SOUTHERN RAILROAD CO.

Even if a railway corporation could, without express charter authority so to do, enter into a partnership, the contract entered into by the railway corporations which are parties to the present case was one of lease and not of partnership. Such contract did not establish any trust relation between the parties thereto.

Argued February 6, — Decided April 18, 1899.

Equitable petition. Before Judge Callaway. Richmond county. September 13, 1898.

The contract referred to in the opinion is as follows:

This indenture, made and entered into the 24th day of February, in the year eighteen hundred and ninety-seven, between Augusta Southern Railroad Company, a corporation organized under the laws of the State of Georgia, hereinafter designated the Augusta Company, the first party, and the South.Carolina and Georgia Railroad Company, a corporation organized under the laws of the State of South Carolina, hereinafter designated the South Carolina Company, the second party, witnesseth:

Whereas the Augusta Company owns and is now operating a line of railroad commencing at the City of Augusta in the State of Georgia, and running thence through Sandersville to a connection with the Central of Georgia Railway at Tennille in the County of Washington in the State of Georgia, and is possessed of equipment, rights of way, depots, depot grounds and yards located at various points on said line of railroad, in and between said cities and towns; and whereas the Augusta Company has issued a series of four hundred (400) bonds of one thousand dollars ($1,000) each, payable in gold on the first day of December, which will be in the year 1924, bearing interest

at the rate of five per cent. (5%) per centum, and has secured the payment of the same by a mortgage bearing date the first day of April in the year 1895, conveying substantially all its property to the Central Trust Company of New York; and whereas the said South Carolina Company is desirous of leasing said property of the Augusta Company :

Now therefore, in consideration of one dollar ($1) to each party in hand paid by the other party, the receipt whereof is hereby acknowledged, and in consideration of the premises and of the rents and covenants hereinafter contained, to be paid and performed by the South Carolina Company, the said Augusta Company doth by these presents grant, demise, lease and farm-let unto the said South Carolina Company, its successors and assigns, all and singular its railroad with the right of way upon which the same is located, and all its depot grounds, yards and lands, whether or not appurtenant to said railroad, and all sidings, tracks, bridges, depots, fences, stations, section-houses, tanks, warehouses, freight-houses, engine-houses, car and machine shops, and all other buildings, fixtures and improvements of whatever kind and description, and wherever situated, now owned or held by the Augusta Company for the use of said line of railroad or in connection with the working, maintenance and operation of the same, and all rights, easements, privileges and appurtenances in connection therewith; also locomotives, tenders, cars, trucks, hand-cars and all other rolling stock and implements, tools and machinery, fuel, materials and supplies, and all other property now owned or possessed or hereafter acquired by the Augusta Company, together with the rents, issues and profits thereof; and also the Augusta Company doth assign and transfer to the South Carolina Company all leases, contracts, agreements and franchises of the Augusta Company, and all rights of action, accounts, and moneys in hand and moneys due, excepting out of the franchises the franchise of being a corporation, and excepting out of the contracts a certain contract with the Smith and Kilby Company, concerning which a suit is now pending in the City Court of Richmond County, in the State of Georgia.  To have and to hold all of said line of railroad, premises, property and appurtenances unto the said

South Carolina Company, its successors and assigns, for its and their own proper use and benefit, from the first day of March, 1897, for and during the term of the corporate existence of the Augusta Company, and any extensions or renewals thereof, the said South Carolina Company paying the rents, keeping and performing the covenants herein contained, to be kept and performed on its part as hereinafter stipulated.

*Article* I.   In consideration of the premises the said South Carolina Company hereby covenants and agrees to pay the principal and the interest as it becomes due and payable upon the said series of four hundred (400) gold bonds hereinbefore described, issued by the Augusta Company, and agrees that as said bonds shall be presented to it for such purpose said South Carolina Company will endorse upon said bonds, and thereupon return the same to the holders so endorsed, the following guaranty, to wit:

"In consideration of the lease entered into between the Augusta Southern Railroad Company and the South Carolina and Georgia Railroad Company, dated the 24th day of February, 1897, the South Carolina and Georgia Railroad Company hereby guarantees the payment of the principal and interest of the within bond in accordance with the provisions of said lease. In testimony whereof, the South Carolina and Georgia Railroad Company has hereunto set its seal and caused its name to be hereunto subscribed by its President and attested by its Secretary."    South Carolina and Georgia Railroad Company.

By           .                              President.

Attest:                                   Secretary."

It is, however, understood and agreed, that if the South Carolina Company shall desire to extend, take up, pay off, refund or renew said four hundred (400) bonds, or any subsequent issue of bonds made in lieu thereof, the Augusta Company will, at the request of the South Carolina Company, for the purpose of taking up, paying off, refunding or renewing said four hundred (400) bonds or any bonds issued in lieu thereof, issue new bonds, secured by mortgage covering its property, not exceeding in par value the par value of the bonds so taken up, paid off, refunded or renewed, and at the same or a less rate of interest

at the option of the South Carolina Company, not exceeding
the legal rate of interest at the time of issue, in place of the
bonds so taken up, paid off, refunded or renewed, or the said
four hundred (400) bonds shall, at the request of the South
Carolina Company, be extended and new sheets of coupons at-
tached for such term and rate of interest, not exceeding five
per cent. (5%) per annum, as said South Carolina Company
may elect; provided, however, that all the bonds issued in lieu
of said four hundred (400) bonds, or succeeding bonds, shall bear
a guaranty of the tenor and effect above stated, and that said
South Carolina Company will pay the principal and interest
thereof. The said South Carolina Company shall have no
other recourse against the Augusta Company for the payment
of the principal of said bonds than the requirement in this
article contained for the issue of other bonds in lieu thereof.

Article II. The South Carolina Company will maintain
the said railroad and property of the Augusta Company in
good working condition and repair, so as to be suitable for the
transaction of all business which can be reasonably done there-
on, and will in like manner maintain all necessary side-tracks
and station-houses, fixtures, appurtenances, tools and machin-
ery pertaining to said railroad, and will in like manner main-
tain, preserve and renew all the rolling stock and equipment
of the Augusta Southern Company in good condition and re-
pair, or, when worn out or destroyed, replace the same with
new of equal serviceable value, and all property substituted
for and added to that which is hereby leased shall be the prop-
erty of the Augusta Company to the same extent as the original
property for which it may be substituted, or to which it may
be added, was the property of the Augusta Company. All roll-
ing stock received by the South Carolina Company from the
Augusta Company, which is now held by the Augusta Com-
pany under car trust contracts, and all other rolling stock
bought to replace worn out or damaged stock, and all rolling
stock which may be acquired by the lessor under the terms
hereof, shall be plainly marked so that they may be readily
identified. It is further agreed that an inventory and ap-
praisement of the station-houses and other buildings, and of

the locomotives, cars and other rolling stock and equipment, and any other personal property of the Augusta Company, shall be made as soon as practicable, and within sixty days from the date of this contract, by two competent persons, one to be selected by each party, and they, in case of disagreement, to select an umpire; said appraisement to be made on a basis of value in gold coin of the United States of America, and at the termination of this contract by forfeiture or otherwise, a like inventory and appraisal shall be made of the same or such substituted property, and the parties making such second inventory and appraisal shall appraise the difference in value, if any, between such property at the beginning and at the termination of this lease, and any difference in the total value of said property at the time of said second appraisal shall be equalized by payment in like money by the South Carolina Company to the Augusta Company or by the Augusta Company to the South Carolina Company as the case may require; provided, however, the Augusta Company shall not be required to pay for any betterments which have been paid for by its bonds or out of earnings which otherwise would have been paid over to the Augusta Company.

*Article* III. The South Carolina Company shall keep accurate accounts of all receipts, earnings and income of said railroad and property of the Augusta Company, and of all expenses and disbursements of and concerning the same, and such accounts shall be at all times open to the inspection of · the officers of the Augusta Company, with the privilege of taking memoranda or copies thereof. The South Carolina Company will, on the 15th days of September and March in each and every year during the continuance of this lease, furnish to the president of the Augusta Company a complete statement of all the receipts and disbursements received and paid out for the Augusta Company during the then preceding current half year ending June 30th and December 31st, respectively, and will furnish such statement at such other times as may be called for by resolution of the board of directors of the Augusta Company, and will in compliance with such resolution submit to the inspection of any person designated by said board

any voucher or vouchers which said board may ask to examine in connection with any statement of account, and such person shall have the privilege of taking memoranda or copies thereof. The South Carolina Company covenants and agrees that the directors and principal officers of the Augusta Company shall have free passes over the line of railroad covered by this lease, and that any of the officers of the Augusta Company shall at any and all times have the right to examine and inspect all the property which shall pass to or be held by the South Carolina Company under the provisions of this lease.

*Article* IV. The South Carolina Company covenants and agrees to indemnify and save harmless the Augusta Company from any liability which may hereafter accrue by reason of accidents, injuries, damages, or liabilities as common carriers or warehousemen, growing out of or in any way connected with the maintenance and operation of the property hereby leased, while operated by the South Carolina Company, and to defend any suit brought against the Augusta Company by reason of any such accidents, injuries, or liabilities, upon being notified of the pendency of such suit. It being understood, however, that any payments made under this article, including the costs and expenses of litigation, shall be charged against the gross earnings of the leased line as hereinafter set forth. Any liability of the Augusta Company which may hereafter become payable as the result of litigation now pending, or as the result of a liability incurred prior to March 1, 1897, shall be regarded as part of its floating debt, including outstanding car trust contracts.

*Article* V. The gross earnings, incomes and receipts earned and received by the South Carolina Company from the possession and operation of the property of the Augusta Company shall be applied and disposed of as follows: First, to the expenses of the maintenance and operation of the property of the Augusta Company, including the payment of taxes and damages and liabilities incurred in the operation of the road. Second, to the repayment of amounts paid out by the South Carolina Company for interest upon said four hundred bonds or said bonds extended or any bonds substituted therefor, and any

additional bonds issued at the request of the South Carolina. Company; and the South Carolina Company, while the property of the Augusta Company is in its possession, shall have no other recourse against the Augusta Company for the repayment of said interest than the earnings of said property of the Augusta Company. Third, to the making of such betterments to the road-bed and other property of the Augusta Company, if any, as the South Carolina Company may think desirable, the cost of the first fifty thousand dollars of which may at the option of the South Carolina Company be covered by an issue of bonds as hereinafter provided. Fourth, the balance of such gross earnings, incomes and receipts shall be applied one half thereof to the use, benefit and account of the South Carolina Company, and the other half to the use, benefit and account of the Augusta Company. It is understood and agreed that any amounts which may be due and payable to the Augusta Company out of the net earnings of each half year of its fiscal year, after the deductions hereinbefore and hereinafter provided. for, shall be paid by the South Carolina Company to the Augusta Company on the 15th day of September and the 15th day of March in each year. It is understood that the earnings of any six months are to be chargeable with any previous deficiency of earnings below expenditures and charges provided for.

*Article* VI. The South Carolina Company will aid the officers of the Augusta Company in carrying the present floating debt of the Augusta Company by loans and otherwise as may be agreed upon by the officers of the two companies, and this indebtedness is to be paid out of the Augusta Company's moneys and accounts receivable accruing prior to March 1, 1897, and also out of the Augusta Company's half of the net earnings, before the Augusta Company shall be entitled to any payments from the South Carolina Company, provided the above indebtedness is not paid by proceeds of an issue of bonds as hereinafter provided, in which event the interest on the bonds to pay this indebtedness and the share of the sinking fund proportionately chargeable to such bonds shall be taken out of the Augusta Company's one-half of the net earnings. Interest on the present bonds of the Augusta Company now outstanding up to.

the 1st of March, 1897, is to be treated as part of the floating debt of the Augusta Company.

*Article* VII.　The South Carolina Company may at any time in its option call upon the Augusta Company to make, and the Augusta Company thereupon will make, issue and negotiate bonds, not exceeding $100,000 in the aggregate, bearing interest at five per cent. per annum, secured by a mortgage on all the railroad and property of the Augusta Company, said bonds to be issued in addition to said four hundred bonds hereinbefore referred to, it being understood that the proceeds of said bonds shall be used to take up and pay the floating debt of the Augusta Company, or to reimburse the South Carolina Company for taking up and paying said debt, including the amounts due and accruing on the Augusta Company's rolling stock trust contracts, and for the betterments to be made upon the road-bed of the Augusta Company.　Such bonds and such mortgage shall be in such form as to sinking fund and otherwise as may be approved by the South Carolina Company.　The share of any sinking fund and the interest of the bonds issued on account of the floating debt of the Augusta Company shall be chargeable to the Augusta Company's one-half of the net earnings. The Augusta Company covenants and agrees not to issue any other bonds or other evidences of indebtedness or any additional capital stock, except with the consent of the South Carolina Company, evidenced by a resolution of its board of directors.

*Article* VIII.　There shall be charged, for the period of ten years from date, $250 per annum for terminal facilities in Augusta, as part of the operating expenses of the Augusta Company's railroad, and thereafter at the expiration of every ten years thereafter, the amount to be charged per annum for the facilities during the next ensuing ten years shall be fixed by agreement between the parties, and if they can not agree, by arbitration as herein provided.

The South Carolina Company in dividing through freights and fares received from freight and passengers hauled over the lines of both companies, or any part of the lines of both, shall allow to the Augusta Company a share thereof at least proportional to the number of miles said freight or passengers

may be hauled over the lines of each, after deducting the amount usual at the time for the use of its Charleston or other terminals, and transfer charges in Augusta, if any, and after making allowances to either party for such arbitraries in the interchange of traffic with other railroad companies as may be customary at the time.

Where soliciting agents and other servants or employees are engaged in the business of both roads, the share which shall be chargeable to the Augusta Company shall be proportional to its proportion of the gross earnings of both companies for such joint business; and the share of the general office expenses, including salaries of general officers and clerks which shall be chargeable to the Augusta Company, shall be proportional to its portion of the gross earnings of both companies, provided such share of the general office expenses shall in no event exceed five per cent. of the total general office expenses per annum of both companies during the next five years, and at the expiration of that period this percentage limitation of the Augusta Company's share of the general office expenses shall be fixed by agreement between the parties, or by arbitration if they can not agree.

The South Carolina Company shall keep the property of the Augusta Company insured in a reasonable amount to be agreed upon between the companies, or to be fixed by arbitration if they can not agree, the premiums to be charged as part of the operating expenses.

*Article* IX. The said Augusta Company covenants that it will during the continuance of this lease keep up and maintain its existence and organization as a body corporate in due form of law; that it will from time to time as a body corporate, and at all times when thereto required by the South Carolina Company, do and perform all such acts, matters and things, consistent with the rights of the said Augusta Company under this lease, as shall be necessary in the opinion and judgment of the said South Carolina Company, its officers or counsel, for the due preservation and protection of all the estate, property, rights, franchises and interests herein demised to the South Carolina Company, and to carry into full effect the true intent and

meaning of this contract, including the acquisition by condemnation of additional real property for modifying the line of the railway, for laying additional switches or increasing depot facilities, the cost and expense of which condemnation shall be charged to betterment account and deducted from gross earnings, and in default thereof that the same may be done by the said South Carolina Company, or by its lawful agents, in the name and as the act of the said Augusta Company. The Augusta Company shall, so far as it is practicable, and as shall be consistent with its rights, allow and employ the South Carolina Company to do and perform by its officers and agents, for and in behalf of the Augusta Company, all the business, acts and things necessary to be done and performed to maintain the organization and existence of the first party as a body corporate, and to preserve and protect the estate, property, rights, franchises and interest demised as aforesaid to the South Carolina Company. For the purpose of carrying this lease into effect, the Augusta Company in consideration of the premises hereby constitutes and appoints the South Carolina Company its attorney for and during the term of this lease, for the Augusta Company and in its name, to do all acts, matters and things, not inconsistent with the rights of the Augusta Company hereunder, necessary to fulfill, enforce, and carry out all and every of the provisions of this lease, according to its true intent and meaning.

*Article* X. In case the South Carolina Company shall at any time fail to pay such sums of money as may be payable by it to the Augusta Company, when the same shall have become payable according to the terms hereof, and such default shall continue thirty days after written demand for the payment of the same, or shall fail to perform any other covenant herein, and such default or failure to perform shall continue for thirty days after written notice requiring such performance, then and in every such case it shall be lawful for the Augusta Company, at its option, to re-enter into and upon its said line of railway and other property hereby leased and every part thereof, and take possesssion thereof, and have and hold such property, together with all additions and improvements which shall have

been made to the same, and all the right, title and interest whatsoever of the South Carolina Company in and to said property shall upon such re-entry thereupon wholly cease and determine. It is further agreed that such re-entry shall not waive or prejudice any claim or right of the Augusta Company to or for damages against the South Carolina Company on account of such non-payment or on account of any non-performance or breach of the terms of this lease.

*Article* XI. In the event of the termination of this lease by forfeiture or from any other cause, the liability of the South Carolina Company upon its guaranty of the bonds of the Augusta Company or the renewals thereof, and upon its covenant to pay such bonds or the renewals thereof, shall thereupon cease and determine both as to principal and as to interest thereafter coming due.

• *Article* XII. It is further understood and agreed, that all differences arising at any time during the continuance of this lease, as to the due performance by either of the parties hereto of any of the covenants herein contained, shall be submitted to arbitrators, one of whom shall be chosen by the South Carolina Company, and one by the Augusta Company, and should they be unable to agree, a third shall be chosen by the said two, and the award of the arbitrators or any two of them shall be binding and conclusive upon the parties hereto. This requirement to arbitrate shall not be binding should there be any unreasonable delay on the part of one party in choosing an arbitrator, after the desire for an arbitration shall have been indicated in writing together with the appointment of its arbitrator by the other of said parties, nor when there shall be any unreasonable delay on the part of the two arbitrators in selecting a third arbitrator, nor when there shall be any unreasonable delay on the part of the arbitrators chosen in making an award. Neither party shall select as an arbitrator any person who, at the time of or immediately before the arbitration, is or was in its employ, except by mutual consent.

*Article* XIII. The South Carolina Company covenants and agrees that it will not sell, assign, transfer or set over, or make

any sublease of the whole or any portion of the premises or property leased hereby, unless in connection with a transfer of the lines of the South Carolina Company to some other company by lease, consolidation, or otherwise, in which event this lease shall be also transferred; but the South Carolina Company may make any assignment or transfer of this lease with the consent of the Augusta Company.

*Article* XIV. The South Carolina Company may at any time during the continuance of this lease change and alter the line, way, and gauge of the Augusta Company's railroad, and in so doing may discontinue any part of the present way or track of said railroad and any shops or depots not required for the use of the line, and may also change the grade or grades of said road, and alter or change the location of any of the tracks, water stations, buildings or erections appurtenant to or connected therewith, and may also, if it shall deem it necessary, purchase and acquire title to any additional real estate for the use of such road, or may exchange its lands or buildings for any other lands or buildings or for other lands more convenient for its use and of equal value for the uses and purposes of said railroad; but all such alterations, changes, purchases or exchanges are to be either charged to operating expenses or to be made at the cost and charge of the South Carolina Company. The South Carolina Company, however, is at liberty to use the proceeds of property sold and property exchanged for the purpose of making such purchases or exchanges; and the South Carolina Company may also from time to time sell such part of the demised premises and property as may not be necessary for the use of said railroad; and the Augusta Company will in case of any such exchange or sale, upon the demand in writing of the South Carolina Company, execute sufficient deeds, but without covenants or warranty of title. All premises received in exchange are to be conveyed to the Augusta Company and held by the South Carolina Company as if the same were now a part of the premises hereby leased; the proceeds of any property of the Augusta Company sold shall be invested in other property of equal value to be held in like manner, or said proceeds shall be accounted for to the Augusta

Company, its successors and assigns.    It is understood, however, that nothing in this article shall authorize the South Carolina Company to do or to call upon the Augusta Company to do any act inconsistent with law, or with the provisions of any mortgage now affecting the property of the Augusta Company, and nothing in this article shall be held to waive the obligations imposed herein with reference to appraisement and compensation for difference in value at the determination of this lease. Any additions to the real property of the Augusta Company paid for by the South Carolina Company shall be appraised at the determination of this lease, and compensation therefor shall be allowed to the South Carolina Company on the final adjustment provided for by Article II, and a list shall be made of the real property, including tracks, sidings, and rights of way, in connection with the first appraisement provided for in Article II, but without appraisement of the same.

*Article* XV.    The Augusta Company covenants and agrees that the South Carolina Company shall at all times hereafter, until the termination of this lease, peaceably and quietly have, occupy, possess and enjoy the premises and property hereby leased or intended so to be, with the appurtenances, and in such manner that it may operate the said line of railroad of the Augusta Company and the whole thereof in connection with the line of the South Carolina Company, without the hindrance of the Augusta Company or the lawful hindrance or molestation of any other person or persons whomsoever, except so far as there may be a foreclosure of two mortgages, one on what is known as the Galvan lot in Augusta, and the other on what is known as the Pringle place in Sandersville, and except so far as concerns the outstanding car trust contracts.    And in the event of a breach of this covenant this lease shall at the option of the South Carolina Company cease and determine, but without prejudice to the remedies of the South Carolina Company for such breach.

*Article* XVI.    The terms, conditions, covenants and agreements of this instrument shall be binding upon the successors and assigns of the respective parties hereto.

In testimony whereof, the parties hereto have caused these

presents to be sealed with their respective corporate seals, attested by their respective secretaries, and signed by their respective presidents, the day and the year first above written.

[Here follow the signatures, seals, and attestations.]

Memorandum of supplementary agreement between the Augusta Southern Railroad Company, of the first part, and the South Carolina and Georgia Railroad Company, of the second part, hereinafter called the Augusta Company, and the South Carolina Company, respectively.

In consideration of one dollar to each party in hand paid by the other, the receipt of which is hereby acknowledged, it is hereby mutually agreed that any bonds that may be issued by the Augusta Company at the request of the South Carolina Company, in accordance with Article VII of the lease of the Augusta Southern Railroad, dated February 24, 1897, shall be guaranteed by the South Carolina Company in like manner as the four hundred bonds the guaranty of which is provided for in Article I of said lease, and subject to the same provisions and conditions as the guaranty of the four hundred bonds, and said guaranty is to cease and determine in the event of the termination of said lease by forfeiture or any other cause, in like manner as provided in Article XI of said lease as to the guaranty of the four hundred bonds. And it is further agreed, that the bonds so to be issued under Article VII of said lease shall be negotiated at such price as may be fixed by the South Carolina Company from time to time, at not less, however, than sufficient to net at least eighty (80) per cent. cash of their par value, which shall be used for floating debts and betterments in accordance with Article VII.

In witness whereof, the parties hereto have caused to be affixed their respective corporate seals and have caused this instrument to be signed by their respective presidents and attested by their respective secretaries, this 27th day of February, 1897.

[Duly executed and attested.]

*Joseph B. Cumming* and *Hornblower, Byrne, Taylor & Miller*, for plaintiff in error.

*Boykin Wright* and *J. R. Lamar*, contra.

SIMMONS, C. J.    It appears from the record that the Augusta Southern Railroad Company, in the year 1897, entered into a written contract with the South Carolina and Georgia Railroad Company.    In this contract, denominated by the parties as a lease, the former company (which will hereinafter be referred to as the lessor) granted, demised, leased and farm-let to the latter company (hereinafter to be referred to as the lessee) its railroad, right of way, depots, yards, rolling-stock, and all its other property, during the corporate existence of the lessor, with a warranty of quiet enjoyment.    The lessee on its part agreed to divers and sundry covenants, among which were that the lessee should assume certain bonded indebtedness of the lessor, maintain the condition of the property, keep it in repair and return it at the termination of the lease in as good condition as it received it, and should pay to the lessor one half of the earnings of the leased road after deducting therefrom (1) the expenses of maintenance and operation, including taxes and liabilities incurred in the operation of the road, (2) the amounts paid out for interest upon the bonds, for the repayment of which interest no recourse was to be had except upon the earnings of the leased road, and (3) such betterments as might be made; certain means being prescribed for ascertaining the amount of the road's earnings.    The instrument further gave to the lessor the right, upon the breach of the covenants, to re-enter and take possession of the property, such re-entry not to prejudice the lessee's right to sue for damages for such breach.    Provision was made for the arbitration of all differences arising as to the due performance of any of the covenants.    It seems that differences did arise, some of which were settled by arbitration, and some of which were, according to the allegations of the petition, never submitted to arbitration.    In 1899, the lessor filed its equitable petition against the lessee, charging various breaches of covenant on the part of the lessee, among them that it had failed to pay the interest on the coupons of the bonds according to contract, that it had failed to keep in repair the road-bed and rolling-stock, and that it was mismanaging the road to such an extent as to lose it much of its patronage.    Other allegations of misconduct were

made, which it is unnecessary here to detail. The allegation that the interest on the bonds had not been paid was not insisted on. An allegation that the lessee was insolvent was made but not sustained. The main object of the petition was evidently to have a court of equity decree a forfeiture and a right of re-entry on the part of the lessor, on account of the breach by the lessee of conditions and covenants in the lease. Apparently the pleader realized that a court of equity had no jurisdiction to decree the forfeiture of a lease, for it was further alleged that the contract was one of partnership, or that, if this was not so, the contract placed the one corporation in a trust relation with regard to the other as to the income and profits which would accrue to the lessor, and that an accounting between the parties would be necessary. The petition prayed for a decree declaring the lease forfeited, for damages, for a receiver pending the litigation, for an accounting, and for general relief. The lessee demurred to the petition, and also filed an answer which denied all allegations as to the breach of any of the covenants of the contract. At the preliminary hearing, the trial judge appointed receivers to take charge of the road and operate it until final decree. To this judgment the lessee excepted, and the case was brought here for review.

The trial judge predicated his judgment upon the position that the written instrument, termed by the parties a lease, really constituted the two corporations partners, or that, if this were not true, at least the lessee occupied a position of trust towards the lessor. We can not agree with him in either of these positions. It is now settled in this State, and in accordance with the very decided weight of authority in other States, that a corporation of this character can not enter into a partnership with another corporation or with an individual, except by authority of its charter. *Gunn* v. *Central R. Co.*, 74 *Ga.* 509; *Ledsinger* v. *Central Line Steamers*, 75 *Ga.* 567; Parsons, Partn. §24; 7 Am. & Eng. Enc. L. (2d ed.) 794. We believe that this fact shows that the intention of the parties was not to enter into a partnership. We could not suppose that the two intelligent gentlemen who are the presidents of these railroads and the able counsel who prepared this lease would, for a moment,

have undertaken to prepare an instrument which would have
constituted the two corporations partners in running and oper-
ating the leased road.   But if these corporations had the au-
thority to form a partnership, did the contract, as evidenced by
the written instrument, constitute them partners?   We think
not.   It conveyed to the lessee all the property of every kind
and character owned by the lessor for and during the corporate
existence of the latter.   When it was executed and the lessee
put in possession, the lessee became the absolute owner of the
property for the term of the lease.   The lessor had no voice in
the management or in the operation of the road, and had no
right to participate in any way in its management or operation.
It had no authority to bind the lessee or the property as a mem-
ber of a partnership may bind the firm and the firm property.
It had no joint interest with the lessee in the property, because
it had fully disposed of all of its interest to the lessee for the
period of the lease.   If the lessee sustained losses in operating
the road, the lessor did not share in them; though it did share
in any profits there might be after certain charges and expenses
had been deducted from the earnings of the road.   These prof-
its are not the joint profits of the two parties.   Under our code,
"a joint interest in the partnership property or a joint interest
in the profits and losses of the business" is required to consti-
tute a partnership even as to third persons.   "A common in-
terest in profits alone does not."   Civil Code, § 2629.   McCay,
J., in the case of *Sankey & Shorter* v. *Columbus Iron Works*, 44
*Ga.* 228, in discussing the meaning of this section of the code
in a very clear and lucid opinion, said (p. 234):   "The lan-
guage is, that a *joint* interest in the profits and losses makes a
partnership, but a *common* interest in the profits does not.   If
the interest is the interest of an owner, if there be a joint seiz-
ure, if the person whose interest is in question has a right, as
such owner, to dispose of the profits, then there is a partner-
ship, if the parties be seized per mi et per tout.   If one may
[dispose] of or control the profits as much as the other, then
there is a joint interest.   But if the party whose interest is in
question have only a 'common interest' in the profits with the
other; that is, if he have no title jointly with the other; if his

position be that of a mere employee, with no right of control as owner over the profits, but with only a common interest in them, that is, interested in common with the other in their increase or decrease because they measure the *amount* of his *wages*, then he is not a partner." We have shown that in the present case there was no joint interest or ownership in the partnership property, because the lessor had for the time disposed of all of its interest to the lessee. There was no joint interest in the profits and losses, but only a common interest in the profits over and above certain charges and expenses because such profits fixed the amount to be paid to the lessor as rent at the times fixed in the contract. The learned trial judge in his opinion seems to think that the lessor would share in the losses, to the extent of losing the profits, if the road was so operated as not to produce profit. We think the word "losses" in our code means something more than the mere failure to realize profits. In order to constitute a partnership by joint interest in the profits and losses, the partners must share in *all* losses sustained by the partnership. They must share in the *net* losses. In the present case there was no such participation in losses. Nor was there any mutual agency. Neither party could make a contract which would be binding upon the other. In general, the test of a partnership is the intention of the parties, gathered from the terms of the contract, to form such an associated body as that which the law regards as a partnership, and such an intention does not here appear. For these reasons we think that there was no intention to form a partnership, and that in fact none was created. The instrument is what it is denominated to be — a lease. The lessor conveyed its property to the lessee, which agreed to pay rent during the term for which it held the property. See Warwick *v.* Stockton, 55 N. J. Eq. 61. "Where the owner of property leases it for business purposes, agreeing to receive in return a proportion of the profits of the business, he receives the amount merely as rent, and is not a partner in the business." Parsons, Partn. (4th ed.) § 71, citing a number of cases.

Nor do we think that there is any such fiduciary relation on the part of the lessee toward the lessor as to create a trust in

favor of the latter. It seems to us that the relation created by the contract is that of landlord and tenant, and that when profits are realized the relation may become that of debtor and creditor. The lessee is bound in any event to pay certain interest on the bonds of the lessor and in certain circumstances it is bound to pay the agreed amount of the earnings after the agreed deductions have been made. If the lessee fails to pay this rent, the lessor has its remedy at law as has any other landlord. If the lessee violates any of the covenants or conditions subsequent contained in the lease, the lessor has its remedy at law by a forfeiture of the lease. It is well settled in this State, and indeed in all the other states, that equity has no jurisdiction to decree a forfeiture. A suit for a forfeiture is founded upon the breach of a contract or condition, and therefore equity will not take jurisdiction to enforce forfeitures. Equity has jurisdiction to relieve against forfeitures, but not to enforce them. Hence the forfeiture of this lease would be a purely legal remedy. Under our system, legal and equitable causes of action may be joined in the same petition, and the courts will enforce each according to the remedies pertaining to it. The same court, in the same case, will enforce a legal right and an equitable one. The present petition seems to seek equitable relief, but there is nothing to give a court of equity jurisdiction. Certainly there is no trust relation between the parties which would authorize the court of equity to interfere. The lessee was, for the term of the lease, absolute owner of the property, with the right to use it and operate it as it deemed best. The lessee was absolute owner of all the earnings, income and profits that accrued from the operation of the road, though bound under its agreement to pay to the lessor at stated times a portion of any profits which might remain after certain deductions were made. The lessor had no legal or equitable right in the profits as profits, but only a contractual right to have its share paid over when earned and due. It had no right to the earnings as a particular and separate fund, although its share of the profits was to be assigned to it therefrom. The lessee had only contracted to pay the lessor at certain periods a certain proportion of the profits, if any were made above certain

charges to be made upon the gross earnings of the leased road. This was purely a contractual relation between landlord and tenant, which was enforceable at law.    In the case of Thomas *v.* R. Co., 139 N. Y. 163, Andrews, C. J., in discussing a question similar to this, said (p. 168): "The substance of the contract between the corporation and the bondholders is that the interest should be paid out of a particular fund, when it should come into existence and be ascertained in the manner provided in the contract.    The earnings of the corporation when received would, of necessity, become the property of the corporation.    They might be wholly absorbed in paying expenses and repairing and operating the road.    If there was a surplus beyond what was required for these purposes, ascertained as provided in the contract, the corporation obligated itself to apply . it to the payment of interest on the bonds.    But until the surplus was ascertained and applied by the corporation to the payment of interest, it remained the absolute owner of the fund, and it was subject to disposition for any corporate purpose by the board of directors.    The corporation was, by its contract, obligated to apply it to the payment of interest on the bonds, and a breach of the contracts would subject it to liability to the bondholders, and such remedies would be open to them as the law affords for breach of contract in other cases.    But the bondholders acquired no title, legal or equitable, to the fund itself.  .  .    The rights and obligations of the parties rested in contract.    There was no appropriation of the fund out of which the interest was to be paid, in any sense which worked a transfer of the legal or equitable title thereto  .  .   when it should come into existence and before it had been set apart by the action of the directors to the payment of interest."  See also Day *v.* R. Co., 107 N. Y. 129, and Uhlman *v.* Life Ins. Co., 109 N. Y. 421.

Having shown that the law does not permit two corporations to enter into a partnership unless they have express charter authority to do so; that, even if it did, this contract was not one of partnership; that the contract was a lease; and that no trust relations were established between the parties which would give a court of equity jurisdiction in the premises, it follows that

the petition was predicated solely upon matters over which courts of law have jurisdiction. While, under our system, legal and equitable causes of action may be joined in one action, yet, if the petition contains no equity, the court can not award equitable relief. See in this connection *Broomhead* v. *Grant*, 83 *Ga.* 451. The appointment of a receiver is a distinctly equitable remedy, and was therefore erroneous in a case where legal rights only were involved.

*Judgment reversed. All the Justices concurring.*