## THORNTON v. McDONALD.

1. When an affidavit to foreclose a laborer's lien upon the property of an alleged partnership is met by a counter-affidavit filed by one of the persons alleged to be a member of the firm, denying the existence of the partnership, and also any indebtedness of the affiant to the plaintiff and that any lawful demand had been made, the latter, in order to recover, must prove that there was a partnership, that it was indebted to him as such for labor, that he had a valid lien upon its property, and that a legal demand for payment had been made and refused.

2. An agreement to the effect that the owner should furnish "the mills, the wagons, the mules, and the hands," and another person owning no interest in any of the property "should give the business [his] personal attention in looking after it, and . . have for [his] services one half of the profits," does not constitute such persons partners in operating a saw-

mill. Such an agreement creates the relation of employer and employee between them, but does not create a joint interest in the profits.

3. When in a case of the nature above indicated the undisputed evidence established such a state of facts as that stated, a mere admission by the owner of the business, that the employee was his partner, would not be sufficient to establish the fact that the partnership really existed, it not appearing that the party setting up the partnership had ever acted upon or been misled by such an admission.

4. Under the evidence set out in the petition for certiorari, the verdict was unwarranted, and the judge erred in not sanctioning the petition.

Submitted May 10, — Decided June 10, 1899.

Petition for certiorari. Before Judge Sheffield. Early superior court. September 17, 1898.

*J. L. Boynton* and *G. D. Oliver*, for plaintiff.
*Powell & Powell*, for defendant.

LITTLE, J. J. A. Thornton, the plaintiff in error, presented a petition to the judge of the superior court of the Pataula circuit, alleging the following facts: In June, 1898, McDonald made oath before a justice of the peace that "Thornton Mills," which was alleged to be a copartnership composed of J. T. Thornton, J. A. Thornton, and J. T. Alsop, was indebted to affiant in a named sum for labor performed by him at said mills under a contract with J. T. Alsop; averring a demand and claiming a lien on the sawmill, machinery, etc., there located. Under this proceeding a fieri facias issued against the mills, machinery, lumber, shingles, etc., on which the lien was claimed, for the amount sworn to be due. This fi. fa. was levied on the property, and J. A. Thornton filed a counter-affidavit, denying the alleged copartnership as well as the plaintiff's lien, claiming sole ownership of the property, and denying the right of Alsop to create a lien on the same. The issue thus formed came on for trial in the justice's court before a jury. At such trial Alsop testified, that he considered himself a partner of the Thornton Mills which are located in Early county; that J. T. Thornton, J. A. Thornton, and witness composed the firm of Thornton Mills; witness employed plaintiff to work at the mills, and agreed to pay him one dollar a day, and plaintiff had demanded payment for the services after his wages became due. Witness testified that his contract with

J. T. Thornton and J. A. Thornton was, that the Messrs. Thornton were to furnish the mills, the wagons, the mules, and hands, and he was to give the business his personal attention and was to have for his services one half of the profits. The plaintiff lived in Alabama, and the witness wrote and hired him because he was an expert machinist; witness left the mills when the sheriff had levied on the property under a lien in favor of Hightower & Co.; it was after this levy that the plaintiff made the demand; all demands made before that time were promptly met. J. A. Hightower testified for the plaintiff, that in the storehouse of Hightower & Co. he heard J. A. Thornton tell T. E. Hightower that Alsop was his partner; this occurred on the day that Keaton went to Blakely to foreclose a lien on the mills in favor of Hightower & Co.

At this point in the trial of the case, defendant moved to dismiss the levy, on several grounds named. The motion to dismiss was overruled. In rebuttal J. A. Thornton testified, that neither J. T. Thornton nor J. T. Alsop has any interest in the property on which the lien is claimed; such property belongs to witness; neither of the persons named is his partner; under the contract with Alsop witness was to furnish the mills, hands, wagons, mules, etc., and Alsop was to put his services in the business, and witness was to give him for his services one half of the net proceeds. Alsop had no authority to hire hands or to contract debts in conducting the business. Witness lives in Calhoun county, and visited the mills once or twice every two weeks or oftener; on the occasion of one of his visits he found the plaintiff at the mills, and told Alsop that he had no use for him and that he would not pay him. Alsop told witness that he, Alsop, had hired the plaintiff to supervise the business generally, and that he would pay him. Alsop was not manager; did not know that he claimed to be a partner or manager until he was notified that Hightower had levied on the mills for a debt of Alsop. On the occasion testified to by Hightower, T. E. Hightower told witness that he had an account against Alsop, and asked if Alsop was his partner; witness told him he was not, that he had nothing to do with Alsop's debts; nor did he ever tell any one that Alsop

was his partner; witness discharged Alsop the day before; at that time the mills had not been levied on, nor did witness know that any one claimed a lien against his property. Keaton testified for the plaintiff, that he heard J. A. Thornton in a conversation with Alsop tell Alsop that he, Thornton, was not to furnish the teams; this was after the levy of Hightower & Co. Moren testified that he had been a laborer at the mills, and J. A. Thornton had told him that he, Thornton, intended to pay him and the plaintiff for their labor. J. A. Thornton, being put on the stand, denied the truth of the testimony of Keaton and Moren. The jury returned a verdict in favor of the plaintiff, and judgment followed accordingly. Petitioner for certiorari alleges that the court erred in refusing to dismiss the levy on several grounds, and that the verdict and judgment were contrary to law and evidence. The petition was in due form, verified according to law, and had attached copies of the several papers constituting the pleadings. The judge of the superior court refused to order the writ of certiorari to issue, and the plaintiff in error excepted to such refusal.

1, 2. Inasmuch as the judge of the superior court refused the certiorari, we are to take the averments of the petition as true, in order to ascertain whether or not he should have sanctioned it. The plaintiff in error met the foreclosure of the laborer's lien by filing an affidavit in which he denied the existence of the partnership, claimed to be the sole owner of the property, denied his indebtedness to the plaintiff in fi. fa. and the existence of the lien claimed by him, and averred that no demand for payment had been made as required by law. He also denied that J. T. Alsop was manager of the mills. This affidavit formed the issue to be tried. Under the issue so raised, it was incumbent upon the defendant in error, before he was entitled to a judgment, to show the existence of the partnership, that it was indebted to him for labor done, that he had a valid lien upon its property, and that a legal demand had been made and refused. Alsop did not own any interest in the property. On the trial he testified that he considered himself a partner of Thornton Mills. "My contract with J. T. Thornton and J. A. Thornton was this: they were to fur-

nish the mills, the wagons, the mules, and the hands, and I was to give the business my personal attention in looking after it, and I was to have for my services one half of the profits." Under the provisions of section 2626 of the Civil Code, a partnership may be created either by written or parol contract, or it may arise from a joint ownership, use, and enjoyment of the profits of undivided property, real or personal. It being admitted that Alsop was not a joint owner of the property, the question as to whether a partnership existed between him and the plaintiff in error must depend on their contract in relation to a division of the profits of the business. By section 2629 of the Civil Code it is declared, that a joint interest in the profits and losses of the business constitutes a partnership as to third persons. It is also a declaration of that section, that a common interest in profits alone does not constitute a partnership. In discussing these two provisions, Judge McCay, in the case of *Sankey & Shorter* v. *Columbus Iron Works*, 44 *Ga.* 234, which is the leading case in this State on the question, having ably argued the question as to what is a common interest in profits, and referring to the confusion which exists in the adjudicated cases on this subject, says: "There are many cases, also, to the effect that one who is employed as an agent or clerk, and to be paid for his services in a share of the profits, is not a partner, even if the profits meant be the 'net profits.' The ground of the decisions is that he has no interest in the profits *as a partner*, but that the profits are merely the measure of his losses [wages]. We think the Code . . uses language evidently intended to convey this idea." Again, in referring to that part of the section which declares that a joint interest in the profits and losses makes a partnership, but a common interest does not, he says: "If one may disapprove [dispose] of or control the profits as much as the other, then there is a joint interest. But if the party whose interest is in question have only a 'common interest' in the profits with the other, that is, if he have no title jointly with the other; if his position be that of a mere employee, with no right of control as owner over the profits, but with only a common interest in them, that is, interested in common with the other in their increase or decrease,

because they measure the *amount* of his *wages,* then he is not a partner." See, also, *Camp* v. *Montgomery,* 75 *Ga.* 795, and *South Carolina & Georgia R. Co.* v. *Augusta Southern R. Co.,* 107 *Ga.* 164.

It is evident from the terms of the contract, as testified to by Alsop, that he was not entitled to any right of disposition of the profits of the mills. He was to perform services, that is to say, he was to give his personal attention in looking after the business, and for these services he was to have one half of the profits — that is to say, he was to be paid one half of the profits. Evidently, from his contract, if the mills ran at a loss, which it is apparent they did, no part of such loss fell upon him. He took no risk except as to the amount of compensation that he would receive for the services rendered. If we take the evidence of the defendant Thornton, Alsop was clearly an employee and had been discharged prior to the levy; but, in any event, neither the interpretation of the contract given by Thornton nor that given by Alsop constituted a partnership between them.

3. It is urged, however, that Thornton admitted that Alsop was his partner. If such admission was made and had been acted on by any person who dealt with Alsop under such admission, or if credit had been given on the faith that the admission so made was true, then, whether the contract between them in fact constituted a partnership or not, Thornton would be held to his admission and treated as a partner. It appears, however, from the evidence set out in the petition, that such admission, if made, was after the creation of the debt and when proceedings were being taken to foreclose liens against his property; and while the admission is to be received at its full value, yet, when it appears that no one was misled by the admission, that no credit was extended on the faith of such admission, and the facts in relation to the contract show that in law a partnership did not exist, such admission is not sufficient to establish the fact that a partnership really existed. One might think that the existence of a certain state of facts constituted him a partner with another, and yet, as a matter of law, no such partnership existed; and unless the admission by one person, that his relation to another was that of a part-

ner, in some way prejudiced the right of a third person, the relation of the parties, notwithstanding such admission, will be determined by the facts as they exist, and not by the admission.

4. It follows from what has been said, that, taking the statements made in the petition for certiorari to be true, the judgment rendered was wholly unwarranted; that the demand averred in the affidavit to foreclose the lien was not the demand required to be made by the statute; and that the judge erred in refusing to sanction the petition for the certiorari.

*Judgment reversed.    All the Justices concurring.*