## MAYNARD *v.* JACKSON.

1. The contract between the parties creates the dual relation of landlord and tenant and of partners.

2. Jackson should be charged with $6600 for the rent of the plantation for 1920; and the court below erred in not sustaining the plaintiff's exception to the finding of the auditor, that Jackson should be charged with only one half of that sum.

3. Under the contract the parties were to share equally in the increased value of the farm over the agreed valuation of $110,000, after Maynard had been paid such agreed valuation; and Jackson was only entitled to share in such increased value after Maynard had been paid the agreed value.

(*a*) If Maynard had breached the contract, and Jackson had tendered, or offered to pay, to Maynard his $110,000, or if he had procured some one ready, willing, and able to pay Maynard said agreed value and his half of such increased value, Jackson would be entitled to recover from Maynard one half of such advanced value.

(*b*) Or if the value of the land had increased above the agreed valuation at the time of the alleged breach of the contract by Maynard, then Jackson would be entitled to have the land sold, Maynard should be paid his $110,000, and the balance of the proceeds, if any, after paying the expenses of the proceeding, should be divided between the parties.

No. 3865. OCTOBER 2, 1924.

Equitable petition. Before Judge Hardeman. Jefferson superior court. May 18, 1923.

T. A. Maynard brought an equitable petition against R. P. Jackson, and alleged in substance the following: Plaintiff is the owner of a certain tract of land generally known as the Pinetucky farm, comprising in all about 5500 acres, more or less, lying in Jefferson, Johnson, and Emanuel Counties. On March 4, 1919, plaintiff entered into a written contract with defendant, whereby

the latter took charge of the land for the purpose of managing the farms, gin, and sawmill located thereon, as the agent of the plaintiff. The following is a copy of the contract:

"Barrow County, Georgia. Know all men by these presents, that this contract entered into this day between Thomas A. Maynard, of Barrow County, Georgia, party of the first part, and R. P. Jackson, party of the second part, of the county of Gwinnett, Georgia, witnesseth, that the said Thomas A. Maynard, party of the first part, agrees to place in charge R. P. Jackson, and to place in his care and keeping, a certain farm located in Jefferson, Johnson, and Emanuel Counties, State of Georgia, said farm consisting of 5500 acres, more or less, and known as the Pinetucky farm, said lands more fully and accurately described in a survey made by William M. Crook, May 28, 1915, but from this survey and acreage there is a reduction of 191 acres that the said Thomas A. Maynard has sold off to J. G. Nasworthy in the southwestern section of said tract of land, and to which said Nasworthy holds deed in fee. Said disposed tract of land being near the Bell old mill-site. The said R. P. Jackson, party of the second part, shall have full and complete charge of the aforesaid Pinetucky plantation as tenant of same; and that the said Thomas A. Maynard is to receive as rental from the said R. P. Jackson the sum of $6600 per annum; then, after the payment of rental aforesaid, the sum total of all the expenses of the said farm shall be paid from the proceeds of the same; and after all expenses shall have been paid, the net remainder of profits of said farm shall be equally divided between the said Maynard and said Jackson. It is further covenanted and agreed that the said farm shall be considered to bear a present valuation of $110,000; and that in the event of the said lands increasing in value during the period of life of this contract, then the said Maynard and said Jackson shall share equally in the increased value of said farm, and all over the present valuation named, after the said Maynard, his heirs and assigns, and estate have been paid the present agreed value of said farm. It is further covenanted and agreed that the said R. P. Jackson is to run the said farm, machinery (requisite upon the same), but further agrees that he will only use the credit of the Pinetucky Development Company except in the interest of the said farm, in erecting, altering, and repairing of all buildings, and

that he shall have full and complete charge of all and all business connected with the property aforesaid that may prove of profit and value to the partnership created by this contract. It is definitely and mutually agreed that all taxes shall be considered and paid as a part of the general expenses of said farm before any division of net profits is made between said parties of the first and second part.

"It is further agreed and understood that the said party of the second part, to wit, R. P. Jackson, is to render his services and earnest efforts in the management of said farm, without compensation except the equal division of net profits of said farm as aforesaid, and that he is to sign all checks, notes, and documents and is to prepare an annual itemized statement in duplicate, which shall be ready upon the first day of each January during the life of this contract, and that a copy of the same shall be furnished by said R. P. Jackson to the said Thomas A. Maynard, on or before the date named. It is further agreed and mutually covenanted that this contract is binding upon the heirs, assigns, and estate of the said parties of the first and second part, and shall not be terminated by the death of either of the parties making same. It is also agreed that this contract is to run for a period of twenty years, beginning March 4, 1919, and terminating January 1, 1940; and that neither party shall have the right to transfer or assign his rights and equities in this contract, except by the written consent of the other party hereto. This contract is based upon the mutual confidence of a faithful and complete performance of all terms and agreements contained therein, and shall be terminated only by a failure upon the part of either to live up to same, or in case of grave and serious calamities or misfortune, such as the act of God, desolation wrought by war, curse of the boll-weevil, etc. And should any difference arise that the said parties to this contract can not agree upon, then it is mutually covenanted and agreed that each shall choose an arbitrator, and the two arbitrators so chosen shall elect a third arbitrator, and the board of arbitration then consisting of the three men chosen as aforesaid shall settle all differences between the parties to this contract; and the said principals hereby bind themselves, their heirs, assigns and estate to abide by the decision of said arbitrators. Said Jackson and Maynard is to have all notes, accounts, and improvements made by

Bridges and Maynard made in 1918, consisting of completed gin outfit, sawmill, three mules, wagons, and all other effects belonging to Pinetucky Development Company, and are only to resume [assume?] three notes given to T. A. Maynard in 1918, aggregating $5000, and $700 owing to Rawlins Company for boiler. The only property not included in the contract is what cottonseed that is on hand which belongs to T. A. Maynard, and said Maynard is to take care of all claims that is made against Pinetucky Development Company while J. J. Bridges was in charge. In witness whereof, we have this the 4th day of March, 1919, affixed our hand and signature the day and year above written." (Signed and attested.)

Plaintiff was induced to enter into and sign the contract by the representations of the defendant that he was a skillful farmer and capable of running the farm successfully; that he was familiar with gins and sawmills and other farm machinery, and was able to operate and repair the same; that he was capable and efficient in the management of farm labor and that he had ample money with which to finance himself and such needs as might arise in the undertaking. All the representations made by the defendant as set forth above were false and fraudulent, and were known by the defendant to be such at the time they were made; they were made by the defendant for the purpose of deceiving the plaintiff, who believed them to be true, relied upon them, was deceived by them, and thereby injured and damaged as hereinafter set forth. Plaintiff, having put defendant in charge of the farm under the contract, was not concerned further about the operation of the same and the property thereon during the year 1919, but left the same in the hands of the defendant, except that plaintiff exchanged two old sawmills on the place for a new and complete sawmill outfit, paying the difference of $1500, and placed the same on the farm to be operated by the defendant for the purpose of sawing lumber to build new houses and repair the old ones on the place. About January 1, 1920, plaintiff demanded of the defendant an itemized statement of his acts and doings during the preceding year, as provided for in the contract; and since said date plaintiff has made several demands upon defendant for said statement; but defendant has refused and continues to refuse to make a statement or to give plaintiff any information about the business trans-

acted during the year, except two vague and incomplete memoranda, one of which he immediately withdrew and later submitted the other as a substitute, which is so indefinite and so incomplete that it is unintelligible, and plaintiff can get no information from the defendant as to the business during the year 1919. An investigation made by the plaintiff shows that the defendant received more money and paid out less than shown in the memorandum submitted. Plaintiff has several times demanded the books for the business during 1919 from the defendant, and that he be allowed to inspect them; which the defendant has refused. For a number of years plaintiff has operated the farm under the trade name of "Pinetucky Development Company," which name is generally and favorably known among merchants and others in that community. Under the contract the defendant agreed not to use the credit of the company "except in the interest of said farm, in erecting, altering, and repair of all buildings." The defendant has broken this agreement, in that he has grossly abused the credit of the company in obtaining money which he has appropriated to his own personal use; also in paying his personal debts, in buying an automobile for the use of himself and family, and in stocking a mercantile store which he and his sons operated on said place under the name of "Jackson & Company." He has hypothecated the rent notes for the years 1919 and 1920, and refuses to give any information as to the disbursement of the money. He has committed waste on the land, has cut down and sold timber therefrom, and has sold the sawmill and outfit, all without the knowledge or consent of plaintiff. The defendant is justly indebted to plaintiff in the sum of several thousand dollars, the exact amount of which plaintiff can not at this time determine, by reason of the facts hereinbefore alleged, the same being for plaintiff's part of the net profits from the business done in the year 1919, and which the defendant refuses to pay, or any part thereof. The defendant is insolvent. The rents from said land are due and are about to be paid to the defendant; and if that is done, plaintiff will be without recourse to recover any part of same. He has no adequate remedy at law. Waiving discovery, he prays that the defendant be enjoined from collecting any of the rents for the years 1919 or 1920, and any other indebtedness due under the contract; that he be restrained from selling, trading, hypothecating, or in any way

transferring any note, check, or other evidence of indebtedness due the parties, and from selling or otherwise disposing of any property belonging to them by reason of their relation under the contract; that a receiver be appointed to collect and take charge of the rents and of the books of the business for the years 1919 and 1920, and to hold them subject to the order of the court; that plaintiff have judgment against defendant for the sums due him by defendant for the years 1919 and 1920, and general relief.

The defendant filed an answer in which he denied the substantial allegations of the petition. By amendment he averred, that the contract was one of partnership; that various acts upon the part of the plaintiff, to wit, the bringing of this suit, interfering with tenants that defendant had contracted with to go on the Pinetucky farm for the year 1921, and publishing a notice in the official organ of Jefferson County, as well as in papers in the other counties where the farm is located, to the effect that the defendant was no longer connected with the partnership operations begun between them, as well as his statements to the public generally that the defendant had no further connection with said farm, have breached his contract, that by reason of the above it is impossible for defendant to carry out his part of the agreement and to act further in a partnership relation, and it is necessary that a dissolution of the partnership be had; that having been willing at all times to carry out his part of the contract, as he now stands ready to do, but the continuance of such relation because of the plaintiff's conduct having become impossible, defendant is entitled to the fruits of his contract and his services, and a division of profits should be had in the dissolution of the contract; that a portion of the assets of the partnership is the increased valuation of the 5500 acres of land, which is $50,000, and defendant is entitled to one half of the same. He prays, by way of cross-bill, that the partnership be dissolved; that an accounting and settlement be had between the parties; that a judgment be decreed in favor of the defendant against the plaintiff for the sum of $25,000; that, if the correct sum can not be arrived at without the conversion of the property of the partnership assets into money, a sale of the property involved in the partnership be ordered, so that a division may be effected; and that such other and further relief be granted as to the court shall seem proper.

The court appointed an auditor to pass upon all questions of law and fact involved. To the auditor's findings of fact and of law exceptions of fact and of law were filed by the plaintiff. The court overruled all of the exceptions but one, sustaining the exception of law to the auditor's finding that the contract created a limited partnership. The court then passed an order that the defendant recover of the plaintiff the sum of $17,268.15. To this judgment the plaintiff excepted.

*Richard B. Russell Jr., W. I. Heyward,* and *A. R. Wright,* for plaintiff.

*Phillips & Abbot, M. C. Barwick, R. G. Price,* and *R. N. Hardeman Jr.,* for defendant.

HINES, J. 1. What is the true relationship of the parties to each other under the contract involved in this case? In his petition the plaintiff alleges that the defendant took charge of his farm under said contract as his agent, thus implying that the relation between plaintiff and defendant was that of principal and agent. There is a suggestion that plaintiff is bound by this classification by him of the contract. The defendant is not in position to hold the plaintiff to this classification, unless he is willing to be bound thereby. Instead of accepting the statement of the plaintiff, implying that the relationship was that of principal and agent, the defendant expressly repudiates this contention, and in his answer asserts that the relationship was that of partners under this contract. It would clearly be unfair to hold the plaintiff to his classification of the contract, and at the same time permit the defendant to repudiate such classification and insist upon a different classification.

As the rights of the parties under this contract depend upon the relation or relations thereby created between them, it becomes necessary at the outset for us to determine the true meaning of the instrument as to such relation or relations. We have to look to the terms of the contract. First, Maynard "agrees to place in charge R. P. Jackson, and to place in his care and keeping," his farm of 5500 acres. This stipulation is equally applicable to the relation of principal and agent, landlord and tenant, partners, or employer and employee. The contract further provides that Jackson "shall have full and complete charge of the aforesaid" farm "as tenant of same; and that the said Thomas A. Maynard

is to receive as rental from the said R. P. Jackson the sum of $6600 per annum; then, after the payment of rental aforesaid, the sum total of all the expenses of the said farm shall be paid from the proceeds of the same; and after all expenses shall have been paid, the net remainder of profits of said farm shall be equally divided between the said Maynard and the said Jackson." The stipulation as to the payment of rent clearly creates the relation of landlord and tenant between the parties, unless there is something else in the contract requiring a different conclusion. The other language last quoted refers to the operation of the farm, payment of the expenses thereof, and division of net profits between them. This language is appropriate to the relation of partners, although in the absence of other language it might be applicable to the relation of landlord and tenant. But it is insisted by counsel for Jackson that the language, "then, after the payment of rental aforesaid, the sum total of all the expenses of the said farm shall be paid from the proceeds of the same," means that the rental which Maynard is to receive from Jackson is to be paid from the proceeds of the farm, and in effect puts upon Maynard and Jackson, and not upon Jackson alone, the obligation of paying this rental, which is wholly inconsistent with the relation of landlord and tenant between the parties, but establishes the relationship of partners between them. There is force in this contention; but when we give effect to all portions of the contract, we do not think that this position is tenable. It is inconsistent with the terms of the contract which provide that Jackson is to have full and complete charge of the farm "as tenant," and that Maynard is to receive from Jackson $6600 per annum as rental of the farm.

The contract then contains this stipulation: "It is further covenanted and agreed that the said farm shall be considered to bear a present valuation of $110,000; and that in the event of the said lands increasing in value during the period of life of this contract, then the said Maynard and said Jackson shall share equally in the increased value of said farm, and all over the present valuation named, after the said Maynard, his heirs and assigns, and estate have been paid the present agreed value of said farm. It is further covenanted and agreed that the said R. P. Jackson is to run the said farm, machinery (requisite upon the same), but further agrees that he will only use the credit of

the Pinetucky Development Company, except in the interest of the said farm, in erecting, altering, and repairing of all buildings, and that he shall have full and complete charge of any and all business connected with the property aforesaid that may prove of profit and value to the partnership created by this contract." It is further "agreed that all taxes shall be  .  .  paid as a part of the general expenses of said farm before any division of net profit is made between said parties." It is further agreed that "R. P. Jackson is to render his services and earnest efforts in the management of said farm, without compensation except the equal division of the net profits of said farm as aforesaid, and that he is to sign all checks, notes, and documents, and is to prepare an annual itemized statement in duplicate, which shall be ready upon the first day of each January during the life of this contract, and that a copy of the same shall be furnished by said R. P. Jackson to the said Thomas A. Maynard, on or before the date named." It is further "covenanted that this contract is binding upon the heirs, assigns, and estate of the said parties,  .  .  and is to run for a period of 20 years beginning March 4, 1919, and terminating January 1, 1940; and that neither party shall have the right to transfer or assign his rights and equities in this contract, except by the written consent of the other party hereto. This contract is based upon the mutual confidence of a faithful and complete performance of all terms and agreements contained therein, and shall be terminated only by a failure on the part of either to live up to same, or in case of grave and serious calamities or misfortune, such as the act of God, desolation wrought by war, curse of the boll-weevil, etc." This instrument further provides that "said Jackson and Maynard is [are] to have all notes, accounts, and improvements made by Bridges and Maynard made in 1918, consisting of completed gin outfit, sawmill, three mules, wagons, and all other effects belonging to Pinetucky Development Company, and are only to resume [assume?] three notes given to T. A. Maynard in 1918, aggregating $5000, and $700 owing to Rawlins Company for boiler.  .  .  Said Maynard is to take care of all claims that is made against Pinetucky Development Company while J. J. Bridges was in charge."

We are of the opinion that this contract creates the dual relation of landlord and tenant and of partners between the parties.

In the first place, Jackson rents the farm from Maynard, and is to pay the latter an annual rental of $6600, whether the farming operations are profitable or unprofitable. Then Maynard and Jackson are to conduct farming operations on said farm so leased by Jackson from Maynard, and operate the machinery on said place. Jackson is to operate said farm and machinery and use the credit of the Pinetucky Development Company, the name under which Maynard and one Bridges had conducted these farming operations, only in the interest of the farm, and in erecting, altering, and repairing all buildings thereon. He is to have full and complete charge of all business connected with said property that may "prove of profit and value to the partnership created by this contract." All taxes are to be paid as part of the general expenses of said farm, before any division of the net profits. Jackson is to render his services in the management of the farm without compensation, except an equal division of net profits from said farm. He is to sign all checks, notes and documents, and prepare an annual itemized statement in duplicate, showing the expenses of the operation of said business, which is to be ready on the first day of each January, and a copy thereof furnished by Jackson to Maynard on or before said date. The relation between these parties was not that of employer and employee. It is not a case where one conducting a business in his own name and on his own account agrees with another that the latter shall attend personally to the business and receive for his services a given portion of the net profits, in which case the relation of employer and employee, and not that of a partnership, would exist. *Thornton* v. *McDonald*, 108 *Ga.* 3 (33 S. E. 680); *Dawson National Bank* v. *Ward*, 120 *Ga.* 861 (48 S. E. 313). In this case Jackson was to do much more than merely render his personal services in a business conducted by Maynard in his own name, for which he was to receive as his compensation only a share of the net profits. The business was not conducted in the name of Maynard alone. But Jackson and Maynard were to be liable for the expenses of operation and for any losses which might accrue in the conduct of the business. The credit of the Pinetucky Development Company was to be used in said farming operations, and in erecting, altering, and repairing buildings on said farm. Thus both parties were made responsible for debts incurred in conducting the farm-

ing operations. The contract expressly declares that a partnership is thereby created. So, looking to the whole instrument, and giving effect to all its parts, we reach the conclusion that the relations both of landlord and tenant and of partners were created by this contract. In other words, Jackson rented the farm from Maynard and was to pay an annual rental of $6600. Then Maynard and Jackson were to operate the farm and machinery thereon, Jackson being the active partner in the conduct of the partnership business, both being liable for the expenses of operation and any losses in the conduct of the business, and both to share equally in the net profits of the business. We can not agree to the contention that the partnership rented these lands from Maynard and that the partners were to pay the rent. This would be in the teeth of the written contract. We can see good reason why Maynard, under the literal terms of this contract, would want to rent the land to Jackson, and to have Jackson pay the rent. It would spur Jackson to make the farming venture profitable.

2. In his third finding of law, the auditor found that under the contract the relation between the parties was that of partners. To this finding of law the plaintiff excepted; and the trial judge overruled this exception. In his thirteenth finding of fact, the auditor found that Jackson should be charged with only $3300 of the rental which Maynard was to receive for his farm. To this finding the plaintiff excepted on the ground that under the contract Jackson should be chargeable with the whole rental of $6600. The judge overruled this exception, and to this ruling the plaintiff excepted. The auditor further found that the rental of $6600 was to be paid by the company, that the rental for 1920 was not paid, and that Jackson be charged with one half thereof. To the finding charging Jackson with only one half of this rent the plaintiff excepted on the ground that under the contract Jackson should be charged with all the rent due the plaintiff. The trial judge overruled this exception, and to this ruling plaintiff excepted. Under the ruling made in the first division of this opinion, these exceptions of plaintiff should have been sustained. Jackson should be charged with $6600 as rental of this plantation for the year 1920. An accounting should be had between plaintiff and defendant as to the farming operations; and after deducting all the expenses of the farm, including taxes thereon, the net profits, if any, should be

equally divided between the parties; and in case of loss, one half thereof should be borne by each of the parties.

3. The most important question in this case and the one which has given us the most trouble is the right of Jackson to recover from Maynard the increased value of this farm arising during the life of the contract. Under the contract it was "agreed that the said farm should be considered to bear a present valuation of $110,000; and that in the event of the said lands increasing in value during the period of life of this contract, then said Maynard and said Jackson shall share equally in the increased value of said farm, and all over the present valuation named, after the said Maynard, his heirs and assigns, and estate have been paid the present agreed value of said farm." The auditor found that Maynard breached this contract in August, 1920, that at the time the farm had largely increased in value, and that Jackson was entitled to a judgment against Maynard for one half of said increased value, less certain items of indebtedness due by Jackson to Maynard. The auditor further found that the proper time for the division of such profits, in the absence of a breach of the contract, would be at the termination of the contract period of 20 years; but that if the plaintiff breached the contract, or terminated it over objection of the defendant before the end of that period, the defendant still being willing to perform and performing his obligations under the contract, then the defendant would be entitled to such profits arising from the increased value of the land which accrued up to the time of such breach or termination. To the above rulings of the auditor the plaintiff excepted. The trial judge overruled his exception, and rendered judgment in favor of Jackson against Maynard for his half of this increased value of the farm. To this ruling and judgment plaintiff excepted. Are these rulings correct? This depends upon the proper construction of the above provision of this contract. Under this provision the parties were to share equally in the enhanced value of the land over its agreed value. If the land advanced in value, each was the owner of half of such increase. Under the contract Maynard did not agree to take and pay for Jackson's half of this enhanced value. Jackson could no more compel Maynard to take and pay for Jackson's half thereof than Maynard could compel Jackson to take and pay for Maynard's half of this enhanced value.

Maynard was to be first paid the agreed value of $110,000 for his farm. After this was paid, he and Jackson were to share equally any value accruing above the agreed value. Each became the owner of one half of such enhanced value, without obligation on the part of either to take and pay for the share of the other in such increased value. Therefore the auditor erred in finding that Maynard was chargeable with one half of this increased value, and that Jackson was entitled to a judgment against him therefor. If Jackson had tendered or offered to pay Maynard his $110,000 and his half of the enhanced value, or if he had pro-- cured some one ready, willing, and able to pay Maynard said sum and his share in such increased value at the time of the alleged breach of the contract by Maynard, and Maynard had refused to receive the same, then, upon the breach of the contract by May- nard, Jackson might have been entitled to recover from Maynard as damages his half of such enhanced value. The facts do not make such case. Or if the value of the land had increased above such agreed valuation at the time of the alleged breach of the con- tract by Maynard, then Jackson would be entitled, upon such breach, to have the land sold, Maynard paid his $110,000, and the balance of the proceeds, if any, after paying the expenses of the proceeding, equally divided between them. In view of the above ruling, the trial judge erred in overruling the plaintiff's fourth and sixth exceptions of fact, and his third, fourth, and eighth exceptions of law to the report of the auditor, the report of the auditor being based upon an erroneous construction of the con- tract between the parties.

*Judgment reversed. All the Justices concur, except Russell, C. J., disqualified.*

HILL, J., concurring specially. I concur in the result reached by the majority of the court that a new trial should be granted, but for a different reason. I construe the contract to be one creating the sole relation of landlord and tenant, and not one creating two relations, as insisted by the majority, viz., landlord and tenant, and a partnership. The following reasons lead me to the above conclusion: There are many elements entering into partnerships, and various tests of determining whether a contract creates a partnership. In the contract here the question as to liability as to third parties need not be considered as one of the

tests, because there are no creditors seeking to hold the parties to the contract liable as a partnership for the debts created under the contract. While the contract has some of the elements of a partnership, yet there stand out strongly and prominently facts which constitute the contract as one between landlord and tenant. As clearly showing the relation of landlord and tenant, the following parts of the contract should be considered. It is expressly provided: "The said R. P. Jackson, party of the second part, shall have full and complete charge of the aforesaid Pinetucky plantation as tenant of same, and that the said Thomas A. Maynard is to receive as rental from the said R. P. Jackson the sum of $6600 per annum; then, after the payment of rental aforesaid, the sum total of all the expenses of the said farm shall be paid from the proceeds of the same; and after all expenses shall have been paid, the net remainder of profits of said farm shall be equally divided between the said Maynard and said Jackson." Here we have an express agreement and understanding that $6600 a year is to be paid and received "as rental." Two expressions in the excerpt which are quoted from the contract reveal clearly the predominant purpose, which is to create a tenancy; and those are the expressions in which it is declared that Jackson is to take charge of the plantation in question "as tenant of the same," and the amount of the rent that he is to pay is fixed at $6600 a year. In placing Jackson in charge of the plantation as tenant certain rights and privileges were conferred upon him that he would not have as a partner. A tenant so placed in possession of rented land has certain exclusive privileges that the owner of the lands can not interfere with, privileges of an exclusive nature which would not belong to one partner as against the other partner. In addition to this, without regard to the predominance of the fact that Jackson is liable in any one year for rental in the amount of $6600, because there is an unconditional agreement upon his part to pay this amount of rental, if at the end of the year when this $6600 became due he failed to pay the same, that amount being rent, the owner of the place would be entitled to sue out a distress warrant against this tenant; and the idea that the owner of the lands could sue out a distress warrant against the man in charge, and who claims to be a partner, is utterly inconsistent with the idea of a partnership. It is true that in the part of the contract

which is set forth there is a provision that "after all the expenses of the said farm shall be paid from the proceeds of the same, and after all expenses shall have been paid, the net remainder of profits of said farm shall be equally divided between the said Maynard and said Jackson." The expression "net remainder of profits" of course implies the idea of an interest in losses, and that is one of the features of a partnership contract; but standing out more prominently than this is the unconditional agreement to pay $6600 rental; and the further provision in this contract that the net remainder of the profits shall be divided has no other effect, in view of the controlling stipulation in the contract, than giving to the owner of the lands an additional rent if there are net profits. "The mere fact that one received a portion of the profits of a business as rent for premises used in the business does not therefore make him a partner in the business, where there is no mutual interest in the capital invested, and the share in the profits paid to the lessor is not given to him as proceeds of a joint venture by the parties, but purely as rent to be paid for the use of the building." 20 R. C. L. 843, § 48, citing Westcott v. Gilman, 170 Cal. 562 (150 Pac. 777, Ann. Cas. 1916E, 437); Thayer v. Augustine, 55 Mich. 187 (20 N. W. 898, 54 Am. R. 361).

It is true that we find in the contract the expression (after the stipulation that Jackson is to rent the farm) that Jackson "will only use the credit of the Pinetucky Development Company except in the interest of the said farm, in erecting, altering, and repairing of all buildings, and that he shall have full and complete charge of all and all business connected with the property aforesaid that may prove of profit and value to the partnership created by this contract." The fact that the contract between the parties is referred to in the document as a "partnership" does not tend to establish the claim that the entire contract creates a partnership. A partnership exists because of the relations created by the contract between the parties to the same, and not as a result of any name that is given to the enterprise. The use of the word "partnership" here has but little weight in determining whether or not such a relationship was actually created. Of course the stipulation that Jackson should "only use the credit of the Pinetucky Development Company except in the interest of the said farm, in erecting, altering, and repairing of all buildings," and that he

should "have full and complete charge of all business connected with the property aforesaid," etc., is language that may be appropriate to a contract of partnership, but such language alone can not give character to the contract under consideration. As we have pointed out above, the unconditional agreement to pay rent, and the vesting of Jackson with the rights of a tenant, are the clauses in the contract which stamp it indelibly with the features of a contract between landlord and tenant; and though it may be repeating, it is such a contract as between the parties to it, without regard to claims of third persons that may have arisen from engagements entered into with reference to the farm by Jackson, the tenant, under the authority with which he is vested in this contract. Jackson had no interest in the land involved, further than that "the said farm shall be considered to bear a present valuation of $110,000; and that in the event of the said lands increasing in value during the period of life of this contract [twenty years], then the said Maynard and said Jackson shall share equally in the increased value of said farm, and all over the present valuation named, after the said Maynard, his heirs and assigns, and estate have been paid the present agreed value of said farm," etc. This created merely a contingent interest in the enhanced value of the land at the expiration of twenty years; and in the event Jackson failed to pay the rent to Maynard, the latter still had the remedies in favor of a landlord against the tenant.

I am therefore of the opinion that the contract in the present case created the sole relationship of landlord and tenant as between the plaintiff and the defendant. Whether as to third parties there was a partnership existing under the contract need not be considered, as that question is not made in the case. Civil Code (1910), § 3158.