## 17597. NELLIS & COMPANY *v.* GREEN & STALLWORTH.

1. Where S., the owner of a peach orchard, made a contract with G., by the terms of which S. was to pick the peaches then being produced in the orchard and deliver them at a certain point to G., who was thereupon to pack and prepare them for market, furnishing for that purpose at his own expense the labor and all necessary containers, and paying all other expenses after the receipt of the peaches by him, and was to have complete control of the shipping and selling, and the parties were to share equally the net proceeds of the sale, there was a partnership between them with reference to the ownership, sale, and collection for the peaches, dating at least from the delivery of the peaches by S. to G. The same would also be true if the agreement was that the parties were to "go fifty-fifty on the crop."

2. In a suit by a partnership to enforce a liability, it is no defense for the defendant to show merely that he has offset his debt to the partnership against a debt to him by one of the partners as an individual.

(*a*) It is immaterial that the defendant may have had no notice of the existence of the partnership at the creation of such debt of the individual member, where the defendant's transactions with the individual member would have been the same had the defendant been put on notice of that fact.

(*b*) Under the facts of this case, the plaintiffs could not have been defeated as to any part of the amount claimed, except upon the ground of estoppel, the burden of establishing which rested upon the defendant and involved proof that the defendant neither knew nor should have known that the peaches were the property of the plaintiffs as partners.

(*c*) If, as to a part of the amount sued for, the plaintiffs should not have recovered unless the defendant in its dealings with the individual member had knowledge of the existence of the partnership and of its ownership of the property dealt with, the evidence was sufficient to authorize the inference of such knowledge.

3. The evidence authorized the verdict in favor of the plaintiffs. There was no error in the court's charge. Although certain evidence which the court admitted may have been subject to the objection that it was irrelevant and immaterial, there appears no reasonable likelihood that the defendant was prejudiced thereby. The court did not err in refusing a new trial.

DECIDED APRIL 16, 1927.

Attachment; from Houston superior court—Judge Mathews. July 10, 1926.

Appeal and Error, 4 C. J. p. 969, n. 56.

Estoppel, 21 C. J. p. 1250, n. 82.

New Trial, 29 Cyc. p. 780, n. 49; p. 781, n. 50.

Partnership, 30 Cyc. p. 372, n. 13, 14; p. 378, n. 28; p. 386, n. 64, 65; p. 388, n. 72; p. 390, n. 80, 81; p. 502, n. 70; p. 589, n. 9 New; p. 591, n. 21.

*Martin, Martin & Snow,* for plaintiffs in error.

*C. L. Shepard,* contra.

BELL, J.   This was a suit by Green and Stallworth, alleged to be a partnership composed of Miles L. Green and Paul Stallworth, against F. E. Nellis & Company, a corporation, to recover an amount which the plaintiffs claimed the defendant was due them as the proceeds of certain peaches sold by the defendant for the plaintiffs on commission.   The trial resulted in a verdict in favor of the plaintiffs and the case is here upon exceptions by the defendant to the overruling of its motion for a new trial.   The defendant's contentions under the general grounds of the motion are that the evidence showed conclusively that the plaintiffs were not partners, but that, whether they were so or not, the defendant had fully paid the amount of the alleged debt by applying the same as a credit to indebtedness due to the defendant by Miles L. Green individually, with whom the defendant dealt without knowledge of the alleged partnership.   In the special grounds of the motion, error is assigned upon two excerpts from the charge of the court and upon the admission of certain evidence.

Miles L. Green testified: "I know Paul Stallworth.   I knew him during the peach season of 1924.   I was connected with him in a business matter in connection with his crop of peaches.   He was a peach grower, and, as far as my connection with him was concerned, I bought a half interest in his peaches located at Bonaire on the terms I was to furnish and pay all expenses after he delivered them to the packing shed, and we would go fifty-fifty on the crop.   Paul Stallworth and myself composed the firm. . . I agreed personally to buy one half interest for furnishing the baskets and paying all expenses after delivery to the sheds."   Paul Stallworth testified as follows: "I had a crop of peaches at Bonaire in 1924.   I made a trade with Myles L. Green about them.   My final trade with Mr. Green was that I agreed to pick the peaches and deliver them to the little shed I had on the place, and he was to furnish the bushel baskets to ship them in, and pack them and ship them through Nellis & Company, and we were to split the net profits fifty-fifty.   I have never received any payment out of these peaches.   The first time that I saw Mr. Schacht was during court here when we had the other trial.   I never did talk with him in connection with this peach deal. . I have talked to

several besides Green. I have never talked to any of Nellis & Company's people. I had not gotten to the place when I was pretty desperate on that fruit crop that year, but I felt like I ought to get something out of it with good fruit, and the returns showed they brought very good prices, considering the large crop of peaches. Mr. Green and myself had no definite arrangement if any loss took place; the only arrangement was that we were to split the profits; he was to pack the fruit and ship it, and I was to split the returns. If the fruit had gone in the market bad and there had been a loss instead of a gain, I suppose I would have my part of the freight. There was no agreement with reference to that. We had good fruit, and naturally we did not expect anything like that. All that I discussed with Mr. Green was the profit end of it; that was just the agreement we had. We had no arrangement about losses; we agreed to split the net profits fifty-fifty; half of it was mine and half of it was his. If there had been any loss, they could have collected it out of me. I have got a home and it is paid for, and no encumbrance on it. I was sick that summer; that is why I did like I did. I was in the hospital fifteen days while he was handling these peaches. Mr. Green was to have complete control of the selling end and do the shipping; it was agreed they were to be shipped to Nellis & Company. I was not to have anything to do with that end of it unless I saw fit; I left that up to Mr. Green, and I didn't know anything about it."

The following further facts were developed by the evidence: During the season of 1924 the defendant sold peaches on commission for various growers in the Fort Valley section. They were represented locally by R. L. Schacht, as general agent. Green controlled the marketing of peaches for several growers during that season, and sold the same through Nellis & Company; as to which the transactions between him and this company were substantially the same as those relating to the peaches produced by Stallworth. The defendant advanced money to him at various times, aggregating for the season about $5,000. The evidence is undisputed that the net proceeds of the Stallworth peaches, handled by the defendant, were entered as a credit on its account against Green as an individual for such advances. The defendant actually made no payment to any one for the Stallworth peaches. On the other

hand, it kept the proceeds and only made book entries with reference thereto. By far the larger portion of the advances to Green were undoubtedly made by the defendant without reference to the character of Green's connection with the Stallworth peaches, and the evidence may have warranted the inference that this was true as to all of such advances. Certainly a contrary inference was not demanded as to any except, *perhaps,* a few items aggregating but a small sum as compared with the proceeds of the Stallworth peaches, for which the plaintiffs sued. More than this, the evidence authorized the inference that before the defendant had any transaction with reference to the Stallworth peaches its agent, Schacht, was fully apprized of the arrangement between Green and Stallworth in regard thereto.

The portions of the court's charge of which complaint is made are as follows:

(1) "If a contract was made between Green and Stallworth by which Green bought an interest in the peaches, and there was an agreement that he would contribute some material thing of value for the purpose of preparing those peaches for market, and they had a joint interest after the peaches were put in the bushel baskets, I charge you that if the peaches were put in the baskets in pursuance of a contract of that sort, in which transaction Green made an investment of material and money, that became partnership property, and therefore they would be partners, if that was done with one single venture only."

(2) "If the contract was merely that Green was to furnish his services and pack the peaches, the case would be different. But if Green made an investment with an agreement that they would be equally interested in the peaches, and that contract was carried out and peaches were crated, using the money or material furnished by Green, in pursuance of a contract, then that would be a partnership venture, or if there was a joint interest in profits and losses, it would be a partnership. A joint interest means where both parties have an interest in the property itself as distinguished from an employee's right to do labor with the understanding that his compensation or wages depended upon the amount of profit made out of the venture. Where that is true,—that is, where the proposition is that one hires himself to another man for a part of the profits,—that would not be a partnership, if nothing more appears."

It is insisted that these charges were erroneous because they contained expressions of opinion as to what had been proved and as to whether the partnership existed as alleged in the petition, and because they were contrary to law in that, under the facts stated, the plaintiffs were not partners.

The evidence to which objection was made was the testimony of Green in reference to a suit brought by him as an individual against Nellis & Company, which was pending at the trial of the present action. Green testified that he had brought such suit, and stated in a general way the nature of the indebtedness alleged therein. He testified that the defendant denied any indebtedness to him as charged in that action, and that the claims therein made were separate and distinct from the cause of action relied on in the suit by him and Stallworth as partners.

1. The evidence, boiled down, shows that Stallworth owned certain peaches in an orchard near Bonaire, Georgia, and that he and Green made a contract by the terms of which Stallworth was to pick the peaches and deliver them at his packing shed; that Green was thereupon to pack and prepare them for market, furnishing for that purpose at his own expense the labor and all necessary containers, and paying all other expenses after the receipt of the same by him, and was to have complete control of the shipping and selling, and the parties were to "go fifty-fifty on the crop," or to share equally the net proceeds of the sale. The testimony of Green was to the effect that he bought a "half interest" in the peaches, and that he and Stallworth were to "go fifty-fifty on the crop." The testimony of Stallworth put the interest of each in the "net profits." We think the testimony of either of these parties shows that the relation between them under the contract was that of partners. As was said by Judge Powell in *Buller* v. *Frank,* 7 *Ga. App.* 655, 657 (67 S. E. 884), "if two or more persons put into an enterprise property, money or other things of value, *other than mere personal services* [italics ours], upon an agreement that they shall each have an interest in the profits as such,—that the earnings on the investment shall determine the extent of the profits, if any, to be received,—it is a partnership. It is not necessary to specify as to the liability for the losses in such cases, for if the business venture proves unsuccessful or unprofitable, the loss occurs as the inevitable concomitant." The

decision in that case seems to be a complete answer to the contention that it must appear in the partnership agreement that each of the parties should share the losses, if any should occur.

"Where there is nothing to show a contrary intention, it will be presumed that the losses were to be shared in the same proportion as the profits." 22 Am. & Eng. Enc. Law, 43. See also *Gray* v. *Blasingame,* 110 *Ga.* 343 (35 S. E. 653), where an agreement to market peaches was held to constitute a partnership, though nothing was said as to the losses. In that case the court quoted from *Perry* v. *Butt,* 14 *Ga.* 699, as follows: "The truth is, in the absence of any express agreement to the contrary, the law, under this partnership in profits, devolves the losses likewise upon each and all of the partners." Compare *Huguley* v. *Morris,* 65 *Ga.* 667; *Camp* v. *Montgomery,* 75 *Ga.* 795. There may be a partnership between persons who contemplate but a single business transaction, provided there is a sufficient unity of interest and control in the business. 30 Cyc. 372.

If Green had put into the venture nothing except his personal services, there might have been some merit in the contention of the plaintiff in error that the agreement in question constituted a mere working arrangement, creating the relation of employer and employee and fixing as the employee's compensation a certain portion of the profits. See, in this connection, *Thornton* v. *McDonald,* 108 *Ga.* 3 (2) (33 S. E. 680); *Thornton* v. *George,* 108 *Ga.* 9 (33 S. E. 633); *Hodges* v. *Rogers,* 115 *Ga.* 951 (2) (42 S. E. 251); *Padgett* v. *Ford,* 117 *Ga.* 508 (2) (43 S. E. 1002); *Hall* v. *Stone,* 11 *Ga. App.* 269 (75 S. E. 140); *Dawson National Bank* v. *Ward,* 120 *Ga.* 861 (48 S. E. 313); *S. C. & Ga. R. Co.* v. *Augusta So. R. Co.,* 107 *Ga.* 164 (33 S. E. 36). However, the distinction between cases like the present, in which both parties put into the enterprise money or property, and those in which one of the parties merely sells his personal services to another in consideration of a stated portion of the profits, has been pointed out several times both by this court and the Supreme Court, and we can not concur in the view that in this case Green was merely the employee of Stallworth. Nor is it true that the relation between them was that of creditor and debtor. They were partners. *Brandon* v. *Conner,* 117 *Ga.* 759 (45 S. E. 371, 63 L. R. A. 260); *Hand Trading Co.* v. *Jones,* 129 *Ga.* 853 (60 S. E. 154); *Floyd*

44

v. *Kicklighter,* 139 *Ga.* 133 (76 S. E. 1011) ; *Maynard* v. *Jackson,* 159 *Ga.* 20 (124 S. E. 892) ; *Dawson* v. *Blitch,* 11 *Ga. App.* 840 (76 S. E. 596) ; *Clegg* v. *Lyons,* 30 *Ga. App.* 482, 487 (118 S. E. 432).

While we have briefly discussed the question of whether the evidence showed that the plaintiffs were partners as alleged, we might have disposed of this question merely by citing the recent case of *Smith* v. *Hancock,* 163 *Ga.* 222 (136 S. E. 52). That case was decided since the present case was argued, and in it the Supreme Court, under similar facts and where the agreement was in reference to the same character of subject-matter (peaches), held that the relation established by such agreement was that of partners. '

2. Nothing is better settled than that a debtor to a partnership can not discharge his debt to the firm by setting it off against a debt due to him by one of the partners individually, where there is nothing to justify an estoppel in his favor against the partnership. See *Hardy* v. *Jones,* 13 *Ga. App.* 457 (79 S. E. 246) ; *Lovelace* v. *Reliable Garage,* 33 *Ga. App.* 289 (125 S. E. 877) ; *Eady* v. *Newton Coal Co.,* 123 *Ga.* 557 (2) (51 S. E. 661, 1 L. R. A. (N. S.) 650, 3 Ann. Cas. 148) ; 20 R. C. L. 910 ; 30 Cyc. 502. In a suit by the partnership to enforce a liability which the defendant seeks to avoid merely upon the ground that he has credited the amount of the debt on an account which he holds against one of the partners as an individual, it is immaterial that the defendant may not have had knowledge of the existence of the partnership. In Rogers *v.* Batchelor, 12 Peters, 221, 37 U. S. 181, 9 L. ed. 1063), the United States Supreme Court said: "But we think that the true principle to be extracted from the authorities is that one partner can not apply the partnership funds or securities to the discharge of his own private debt without their consent; and that without their consent the title to the property is not divested in favor of such separate creditor, whether he knew it to be partnership property or not. In short, the right depends, not upon his own knowledge that it was partnership property, but upon the fact whether the other partners had assented to such disposition of it or not." The code provides that "Third persons acquire no title to partnership assets by purchase from one member, when notice or a reasonable ground of suspicion is known to

them that the partner is misapplying, or seeks to misapply such assets." Civil Code (1910), § 3184. This provision has no application in the present case, although by analogy it may shed light on the question here under consideration. Of course, circumstances might arise whereby the partnership would be estopped to insist that the liability was one accruing to the partnership rather than to one of the partners with whom the defendant dealt and against whose debt the defendant had made the offset, as where the partnership occupies the relation of a concealed principal and by reason of such concealment the defendant has acted to his detriment in dealing with one of the members as an individual. Here the defendant simply made a book entry on the unsecured open account which it held against Green for advances which, certainly as to some items and inferably as to others, it made to Green without reference to whether the Stallworth peaches were Green's property or the property of the plaintiff partnership. It at no time had any security for Green's debt and surrendered none. If Green was indebted to the defendant as claimed, he is still indebted. Unquestionably, as to a large portion of the plaintiffs' claim, the defendant, so far as appears, has not altered its position nor done anything to its detriment as a result of its alleged want of notice of the existence of the partnership. If, as to an amount equal to some of the advances, the plaintiffs should have been estopped unless the defendant knew of the partnership and its title to the peaches when making such advances, there was evidence sufficient to authorize the inference of such knowledge. Under the facts appearing, the plaintiffs could not have been defeated as to any part of the amount claimed except upon the ground of estoppel, the burden of establishing which rested upon the defendant and involved proof that it neither knew nor should have known of the partnership. See *Fidelity & Deposit Co.* v. *Nisbet,* 119 *Ga.* 316 (7) (46 S. E. 444) ; *Irvine* v. *Wiley,* 145 *Ga.* 867 (3) (90 S. E. 69) ; *Alston* v. *French,* 5 *Ga. App.* 110 (2) (62 S. E. 713). The contention, therefore, that the plaintiff's debt was, as a matter of law, paid by the offset referred to can not be sustained.

3. Under the rulings made in the two preceding divisions, the evidence authorized the verdict. From what is said in the first division, there was no error in either of the excerpts from the charge of the court. See, in this connection, *Powell* v. *Moore,*

79 *Ga.* 524 (4 S. E. 383). In view of the facts developed by the evidence, it may be that the testimony of Green with reference to his separate suit was relevant and admissible. But whether so or not, it is not likely that the defendant was prejudiced by its admission. Compare *So. Ry. Co.* v. *Harper,* 32 *Ga. App.* 267 (2) (123 S. E. 154). The court did not err in refusing a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*