27752. UPSHAW *v.* UPSHAW.

DECIDED DECEMBER 5, 1939.

*W. A. Ingram,* for plaintiff in error. *J. R. Whitaker,* contra.

STEPHENS, P. J. Troy Upshaw sued Murray Upshaw for damages. It appeared from the petition that a servant of the defendant was driving defendant's truck in the prosecution of the defendant's business immediately behind a truck of the plaintiff when the driver of the defendant's truck negligently ran into the plaintiff's truck and damaged it. The defendant denied liability. He alleged that the damage to the plaintiff's truck was caused by the negligence of the driver thereof. By an amendment to the petition, allowed on the trial of the case, it was alleged that the defendant, on the occasion referred to, was in charge of and directing the movement of both trucks and the drivers thereof, and that any negligence of both or either of the drivers was imputable to the defendant.

From the evidence adduced on the trial, in addition to evidence of negligence of the defendant, and negligence of the driver of the plaintiff's truck, and of the damage, the following appeared: The plaintiff and the defendant were brothers and were sole heirs at law of their father's estate which consisted of farm and timber lands. There was no administration upon the estate. The plaintiff testified in part as follows: "As to whose lumber that was on the truck, it was lumber on my father's estate. As to whether or not it had been sawed up by my father's estate by me and my brother, it belonged to me and my brother. Me and my brother are the sole heirs of my father's estate. . . When we get the obligations settled that property belongs to me and Murray Upshaw. I imagine it is true that me and my brother own our father's estate, its liabilities and assets, and own this property where the lumber came from. This lumber was carried and sold at Chatsworth. As to whether it belonged to me and Murray Upshaw, it belonged to

274

the estate. It didn't belong to us personally, as I see. Both my truck and Murray's had been up to Chatsworth with loads of lumber that day. They had been to Chatsworth and were returning from Chatsworth at the time this wreck occurred. My truck and Murray Upshaw's too. . . The driver of my truck was Temple, but I don't know his age. Temple was not under my employ at the time. As to whose employ he was under, he was just a farm hand on one of the farms. He was at the sawmill at the time, and he was instructed to get on the truck by my brother and go to Chatsworth. . . I didn't have anything to do with the operation of the sawmill. It belonged to my brother. I didn't have anything to do with the sawmill. . . My brother owned that. It is his individual property. He looks after the sawing and moving of the lumber. He was directing the movement of the trucks on the occasion in question, even to the selection of the driver. He owns the mill and cuts the lumber on my father's estate and if any profits are not [made?] they are used to pay off the debts. The farm proposition is the same way. I look after that. I own the mules, tools, etc. . . The profits from the farm operations go also to liquidate those debts. As to whether or not my work in operating the farm offsets Murray's work in operating the sawmill, I look after the farm, own the mules, and rent the land. He looks after the sawmill and owns the mill. My truck was up at the mill, and he had an order from Chatsworth for some lumber, and used my truck. I had sent it up there for a load of slabs. . . I pay rent to the estate. I rent the farm from the estate and obligate myself to pay rent. As to whether the business of mine and Murray's is together or separate, the farm is separated by me. I have an understanding and finance it through the year, and I rent the land to finance it. My brother signs the waiver. The government requires the waiver signed by him. . . But any profits I make go to liquidate the debts, just the same as the sawmill. . . As to whether or not the profits or rent go that way, we just work and pay the obligations as we can. My business and Murray's business is to help liquidate the debts. . . As to whether or not I have an interest in the lumber and the estate does, and one half of that belongs to me, but it goes to pay the debts, and the same way about the profits from the farm, we have just taken over the estate to liquidate it and when it is clear it will be ours. . . It is custom-

ary to use both those trucks in the hauling of lumber. *There was an understanding between me and the defendant that he could use that truck any time it was necessary.* I was equally interested in the lumber for the estate. . . As to whether me and Murray were equally interested in that venture, he controlled it and looked after it. . . I testified that my business was farming, and that that business is separate and distinct from my brother's business. I own the mules and tools and rent the land from the estate. There is no executor or administrator; it is just left in our hands; I don't know how you would call it. As to where I pay rent from the farm, I pay it where it is needed worse on the obligations, my father's obligations. I do not operate the sawmill; my brother operates the sawmill. I have not got anything to do with it. He owns the sawmill, employs his own labor, runs that side of the business and moves that lumber. It is two separate and distinct businesses. I farm and he is in the other business. There is no partnership, as I would call it. . . He pays for the expenses of sawing the lumber from the sale of the lumber; pays for the operation of the mill, and applies the profits on the debts. He owns the sawmill, he is in full control of the sawmill and lumber business, and I look after the farming business. He pays for the operation of the sawmill out of the lumber, and when the expenses of the sawmill are paid the profits go on the indebtedness. . . Me and Murray just control it [the estate]. . . We are running it as a private business, as we see fit. . ."

Murray Upshaw, the defendant, testified on cross-examination by the plaintiff in part as follows: "As to what he [the plaintiff] said about the ownership of the sawmill, it is true. He has nothing to do with the operation of the sawmill business. What he said about the mules, tools, and farming interest is also true. As to these trucks going to Chatsworth on the occasion in question; well I was sawing on our father's estate to take care of some obligations he had. I had both the trucks up at the mill that day . . one of the trucks was up there to get some slabs, it was Troy Upshaw's truck. Troy's truck and the driver were under my direction and control on this occasion. Troy didn't know anything about it, didn't have anything to do with it at all. . . What Troy said about the ownership of the timber and payment of the expenses etc. coming out the timber and the balance going to pay the debts

which we both assumed, the obligation on our father's estate, is true, and also what he said about the operation of the farm and the profits from that going to the estate and pay the debts which we both obligated to pay, is true. I was contributing my time to the sawmill, and he was contributing his time on the farm. I really study and know that business, and Troy has studied agriculture, and is trying to specialize in that—growing plants. Ever since we have been in the sawmill I have taken charge of it, and when it is necessary to meet some of my father's obligations on my father's estate, we move on it. We have assumed his obligations. I look after the lumber business and he looks after the farming, plants. It makes a very good arrangement. . . Troy and I have independent businesses. We have no partnership, only our father's estate, and we are just jointly interested in liquidating the debts so we can get our respective shares as heirs at law. Troy pays rent; rents it from the estate. . . As to whether or not I said as to our father's estate we do operate a partnership, Troy has his plant business separate and I have my sawmill separate. As to whether or not I share his profits, it amounts to that in that those debts are being paid. We are paying them off."

The jury returned a verdict in the plaintiff's favor for the full amount sued for. The defendant moved for a new trial upon the general grounds, and by amendment added four special grounds. To the judgment overruling the motion for new trial the defendant excepted.

■ The evidence did not demand a finding by the jury that there existed a partnership between the plaintiff and the defendant in the operation of the sawmill and the farm. The evidence demanded a finding that the plaintiff and the defendant operated each business separately and independently of the other. The plaintiff operated the farm separately and independently of the sawmill business which was operated solely by the defendant, and the defendant had nothing to do with the management or operation of the farm. The defendant operated the sawmill separately and independently of the farm which was operated solely by the plaintiff, and the plaintiff had nothing to do with the management or operation of the sawmill. Each business was operated at the expense of the brother running it. It is true that the net profits derived from the operation of each business went to the extinguishment of debts against the

estate of the deceased father, which the plaintiff and defendant held in common as the only heirs at law, without any administration. The fact that a person shares in the profits of a business, but has no joint interest in the property of the business or liability for its debts, is not sufficient to constitute such person a partner in the business. See *Thornton* v. *McDonald*, 108 *Ga.* 3 (33 S. E. 680); *Hodges* v. *Rogers*, 115 *Ga.* 951 (42 S. E. 251); *Cowart* v. *Fender*, 137 *Ga.* 586, 590 (73 S. E. 822, Ann. Cas. 1913A, 932); *Allgood* v. *Feckoury*, 36 *Ga. App.* 42 (135 S. E. 314). It does not appear that the plaintiff and the defendant had any joint interests in the profits and losses of each of these enterprises, or that they had any interest each in the business of the other, except as to the disposition of the net profits which went to extinguishing the debts against the property of the estate which they owned together. The fact that the brothers together owned the property of the estate of their father would not constitute them partners in the farming business and in the sawmill business where the businesses were separately conducted, one business being conducted by one brother and the other business being conducted by the other brother.

■ If the plaintiff and the defendant were not engaged in a joint enterprise or in a partnership in the operation of the trucks, no negligence of the defendant in the operation of his truck would be imputable to the plaintiff, and if the plaintiff's truck was at the time being operated by the defendant, and the defendant had commandeered the plaintiff's truck without the plaintiff's knowledge and consent, it was then being operated by the defendant upon the defendant's own responsibility, and the plaintiff's driver at the time was the agent and servant of the defendant, and the defendant was responsible for any damages happening from this driver's negligence. This liability by the defendant would not, however, be absolute, but would be dependent only upon the negligence of either driver, who at the time was the agent and servant of the defendant, proximately contributing to the damage to the plaintiff's truck. The court erred therefore in charging the jury as follows: "If you do not believe from the evidence that the plaintiff's truck was being used in pursuit of a partnership business, or joint enterprise of plaintiff and defendant, then if you should find that the defendant, Murray Upshaw, was using the plaintiff's truck without plaintiff's consent; that he had sent a

driver with plaintiff's truck to Chatsworth without plaintiff's consent; then if you believe that the accident happened as alleged and proved, then you should find for the plaintiff regardless of whether or not plaintiff's or defendant's driver was negligent, in such a case the defendant's liability would be absolute."

■ It does not appear conclusively without dispute from the evidence that the plaintiff's truck, which was being operated in hauling lumber for the defendant at the time and place, was being operated by the consent of the plaintiff. The evidence presents an issue of fact as to whether the negligence of the driver of the defendant's truck or that of the driver of the plaintiff's truck was the proximate cause of the damage to the plaintiff's truck. Therefore the evidence did not demand a finding for the plaintiff. An erroneous instruction therefore which could have influenced the verdict adversely to the defendant was error. The amount of diligence resting upon either driver in the operation of the truck, under any theory of the evidence, whether there was a partnership or whether there was no partnership, whether the plaintiff's truck was being operated with or without the plaintiff's consent, was the duty to exercise ordinary care in the operation of the truck. There was no duty resting upon either driver to exercise *extraordinary* care or diligence. It was therefore error for the trial judge to charge the jury that if they should "find that the defendant was using plaintiff's truck, had sent his driver . . with plaintiff's truck with plaintiff's consent . . then I charge you that it was the duty of plaintiff's driver, being in that case the servant of the defendant, also of the defendant's driver, he being defendant's servant—it was the duty of both drivers to exercise extraordinary care to avoid injury and damage to plaintiff's truck;" that if either driver failed to exercise extraordinary care and that failure was the proximate cause of the damage to the plaintiff's truck the jury should find for the plaintiff, and that "it is the duty of a person operating a motor vehicle along the highway so close to another vehicle, being driven by another person, to exercise ordinary care, and as applied to this case, extraordinary care in observing signals or warnings from the driver ahead, if such warning or signal is given by the driver ahead to stop, start, or turn the vehicle he is driving to the left or right." See *Jackson* v. *Smith,* 56 *Ga. App.* 763 (194 S. E. 41).

It follows that the judge erred in overruling the defendant's motion for new trial.

*Judgment reversed. Sutton, J., concurs. Felton, J., concurs specially.*